EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

v.

E. I. duPONT de NEMOURS AND
COMPANY and Chestnut Run and
Affiliated Facilities, Appellants.

No. 74–1677.

United States Court of Appeals,
Third Circuit.

Argued Feb. 12, 1975.

Decided May 9, 1975.

James M. Tunnell, Jr., David A. Drexler, Thomas Reed Hunt, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for appellant; John F. Lawless, Legal Dept., E. I. duPont de Nemours & Co., Wilmington, Del., of counsel.

William A. Carey, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Carol Lynn Green, EEOC, Washington, D. C., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The sole question presented for decision is whether Section 706(f)(1) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–5(f)(1), contains an implied 180-day limitation period for civil actions commenced by the Equal

Employment Opportunity Commission (EEOC). The district court denied duPont's motion for summary judgment challenging the timeliness of this action and certified the question under 28 U.S.C. § 1292(b). EEOC v. E. I. duPont de Nemours & Co., 373 F.Supp. 1321 (D.Del.1974). We permitted an appeal to be taken from this order and now affirm. We align ourselves with decisions of the Fourth, Fifth and Sixth Circuits, holding that no such 180-day limitation restricts EEOC.[1]

## I.

In December, 1969 William Parker lodged a charge of racial discrimination with the EEOC against duPont. After deferral of the charge to and decision by the appropriate Delaware state agency, the EEOC, on March 29, 1970, filed Parker's charge against duPont. An investigation ensued, resulting in a determination that there was reasonable cause to believe that duPont engaged in racially discriminatory hiring practices and maintained racially segregated departments.[2] Efforts to arrive at a conciliation agreement proved fruitless; and, on November 13, 1972, EEOC commenced this action.

In pertinent part Section 706(f)(1) provides:

> If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent . . . named in the charge. . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . .

If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference . . ., whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. . . . Upon timely application, the court may, in its discretion, permit the Commission . . . to intervene in such civil action upon certification that the case is of general public importance.

It is duPont's contention that this section requires the Commission to institute suit within 180 days after the charge is filed. Specifically, duPont urges the following construction of this section: During the first 30 days after the charge is filed, no one may institute suit; for the next 150 days only EEOC may sue; for the next 90 days only the aggrieved party may sue; after this 90-day period, all rights to sue are statutorily extinguished.

DuPont emphasizes that the date EEOC commenced this action is more than 180 days not only from the date of filing the Parker charge, but also from the effective date of the 1972 amendment.[3] Therefore, duPont contends, regardless of the date from which we

1. EEOC v. Kimberly-Clark Corp., 511 F.2d 1352 (6th Cir. 1975); EEOC v. Louisville & Nashville R.R. Co., 505 F.2d 610 (5th Cir. 1974); EEOC v. Cleveland Mills Co.. 502 F.2d 153 (4th Cir. 1974), cert. denied 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

2. EEOC exonerated duPont of racial discrimination vis-a-vis Parker.

3. The Equal Employment Opportunity Act of 1972 expressly made the Section 706 amendments applicable to those charges pending with the Commission on the date of enactment. Act of Mar. 24, 1972, Pub.L. No. 92–261, § 14, 86 Stat. 113.

measure the 180 days, EEOC's right to file suit is statutorily barred.

Based on an analysis of the statute itself, its legislative history and considerations of public policy, we reject this construction of Section 706(f)(1).

We start with the recognition that the statute is no model of legislative clarity. We are required to delve into statutory construction, and here we agree with Justice Frankfurter "that the troublesome phase of construction is the determination of the extent to which extraneous documentation and external circumstances may be allowed to infiltrate the text on the theory that they were part of it, written in ink discernible to the judicial eye." [4]

## II.

Facially, Section 706(f)(1) is divided into two distinct parts. One governs actions brought by the EEOC; the other governs private actions brought by aggrieved parties. The parts must be read from the standpoint of that which is expressly stated and of that from which implications are drawn. The section contains no provision setting forth in *ipsissimis verbis* a time limit on EEOC's right to institute suit. The only express conditions precedent to suit by EEOC are (1) that more than 30 days must have elapsed from the date of filing the charge, or from the date of expiration of a period of reference, and (2) that a satisfactory conciliation agreement must not have been obtained.

The 180-day proviso explicitly addresses private actions, operating as a front-end limitation on the right of the aggrieved party to sue. During this period the party must await either the effectuation of a conciliation agreement or an action commenced by EEOC. If, by the end of this 180-day period, such activity has not taken place, the aggrieved party may commence a private action.[5] There is, however, an express, 90-day rear-end limitation to which the party's action is subject. Thus, at the completion of this 90-day period, the aggrieved party's right to file suit is statutorily extinguished.

Appellee argues that appellant essentially seeks to impose a 180-day statute of limitations on EEOC's right to sue and that we should not imply such a limitation absent a clear Congressional design. Appellant counters, characterizing the 180-day limitation not as a statute of limitations but as a condition engrafted upon a statutory right of action, which, when unsatisfied, bars the right as well as the remedy. Simon v. United States, 244 F.2d 703 (5th Cir. 1957).

Appellant's argument misapprehends the issue before us. The rule which requires strict application of time restrictions embodied in a newly-created right of action does "not come into play until the court finds a limitation in the statute." EEOC v. Louisville & Nashville R.R. Co., *supra*, 505 F.2d at 614. Here our task is not to decide *how* to apply such a provision, but to decide *whether* Congress imposed it.

Title VII implements the important Congressional policy against discriminatory employment practices. To this end, Congress created the EEOC, first giving it the role of conferee, conciliator and persuader, and later giving it the added role of court enforcer. When EEOC institutes a civil action, it does so not only in the interest of the charging party, but also in the public interest, as a federal agency charged with enforcing the Congressional policy against discriminatory employment practices.[6] *Cf.* Trbovich v. United Mine Workers, 404 U.S. 528, 538–39, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). EEOC's role as an enforcer of the public

---

4. Frankfurter, Some Reflections on the Readings of Statutes, 47 Colum.L.Rev. 527, 529 (1947).

5. Section 706(f)(1) also provides that "the Commission . . . shall so notify the person aggrieved and within ninety days after giving of such notice a civil action may be brought . . .."

6. The Joint Conference Committee, in its Section by Section Analysis, observed "that claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant." 118 Cong.Rec. 7168 (1972).

interest also surfaces when a member of the Commission files a charge. Given this important Commission function, we do not believe that Congress would impose a 180-day limitation on Commission actions without clearly so stating in unambiguous language. *See* E. I. duPont de Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924); United States v. De Queen & Eastern R.R. Co., 271 F.2d 597 (8th Cir. 1959).

Although Section 706(f)(1) manifests a Congressional schema whereby a party's private right of action is premised on the satisfaction of express time limitations, no such 180-day limitation is expressly imposed on Commission actions. The very absence of an explicit Commission limitation, in the face of an express private limitation, strongly suggests that Congress did not intend that EEOC actions be governed by the limitation period. Indeed, when Congress sought to impose specific time limitations in other portions of Section 706 it did so clearly: Charges are to be filed within 180 days of the alleged discriminatory occurrence;[7] an employer is to be notified of the charge within 10 days;[8] an investigation is to be completed within 120 days "so far as practicable";[9] civil actions are to be expedited;[10] a master can be appointed if the case has not been scheduled for trial within 120 days after issue has been joined;[11] and back pay liability is limited to two years prior to the filing of the charge.[12] Thus, facial reading of the section as a whole supports the conclusion that Congress did not intend an implied 180-day limitation on Commission actions.

### III.

Although the legislative history of the 180-day provision does not disclose a Congressional intent in *chiaroscuro*, let alone *chiaro*, what guideposts are visible do not necessarily point to duPont's construction. During the 1972 hearings the major Congressional conflict arose over whether the EEOC should be granted cease-and-desist power or court enforcement power.[13]

Supporting their differing views of the Congressional psyche, the parties have largely pointed us to isolated remarks of individual Congressmen. Of more utility, we think, is the studied Section-by-Section Analysis of the Joint Conference Committee.

The retention of the private right of action, as amended, is intended to make clear that an individual aggrieved by a violation of Title VII should not be forced to abandon the claim merely because of a decision by the Commission . . . that there are insufficient grounds for the Government to file a complaint. Moreover, it is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission . . . does not act with due diligence and speed. Accordingly, the provisions described above allow the person aggrieved *to elect to pursue his or her own remedy under this title* in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC . . . . However, as the individual's rights to redress are paramount under the provisions of Title VII *it is necessary that all avenues be left open for quick and effective relief.*

---

**7.** Section 706(e), 42 U.S.C. § 2000e–5(e).

**8.** Section 706(b), (e), 42 U.S.C. § 2000e–5(b), (e).

**9.** Section 706(b), 42 U.S.C. § 2000e–5(b).

**10.** Section 706(f)(2), (5), 42 U.S.C. § 2000e–5(f)(2), (5).

**11.** Section 706(f)(5), 42 U.S.C. § 2000e–5(f)(5).

**12.** Section 706(g), 42 U.S.C. § 2000e–5(g).

**13.** 1972 U.S.Code Cong. & Ad.News 2137, 2167–76. Although the Senate proposal for cease-and-desist power contained an express 180-day limitation on the use of this power if a private action was thereafter filed, S. 2515, 92d Cong., 1st Sess. at 48 (1971), it is significant to note that as enacted Section 706 contains no such express limitation.

118 Cong.Rec. 7168 (1972). (Emphasis added). DuPont mounts the argument that this language indicates Congress intended EEOC court action within 180 days and, after that date, private party court action within the following 90 days. Furthermore duPont contends that the reference to "election" cannot be read to permit the aggrieved party to choose private action or EEOC action. We disagree. The Committee statement does not unerringly support duPont's "transfer-of-right" theory. Rather, we read the language simply to allow the aggrieved party to sue privately when the Commission has neither effected a conciliation agreement nor commenced a civil action within the 180 days. It gives the private party a choice: he can bring his own private action or he can rely on the representation of the Commission.

In sum, while the legislative history does not lead unerringly to one conclusion, we do not believe that justification for duPont's interpretation may be gleaned from this history.

## IV.

Equally persuasive, we believe, is a consideration of the purpose of the 1972 amendments to Title VII. This must be understood if we are to give proper meaning to sterile statutory text. Prior to these amendments, EEOC's role in redressing employment discrimination was limited to that of conferee, conciliator and non-coercive persuader. Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); EEOC v. Cleveland Mills Co., supra, 502 F.2d at 155. Believing that the voluntary compliance approach had been singularly unsuccessful in eliminating employment discrimination,[14] Congress added court enforcement to EEOC's arsenal of powers. While the Joint Committee analysis expressed the hope that EEOC action would forestall the need for numerous private actions, its approach is not inconsistent with the stated Congressional goal that conciliation remain the preferred method of dispute resolution.

Ibid. at 157. Congress may well have believed that employers would be more likely to respect Title VII's mandates if they were required to deal with an agency capable of taking the matter to court should the conciliation process break down. Viewed from this perspective, an implied 180-day restriction on court enforcement would be counter productive.

Thus, we find much force in Judge Celebrezze's analysis:

We cannot reconcile Congress' dual directive that the EEOC attempt to conciliate employment discrimination claims and that it carry a heavy judicial enforcement burden with a 180-day limitation on the Commission's right to sue. . . . It is precisely in the type of case where the EEOC might ultimately decide to sue—where widespread discrimination of a systematic or subtle nature is involved—that effective conciliation attempts may well require more than six months. . . . Forcing the EEOC to break off conciliation efforts 180 days after the filing of a charge for fear of losing the right to sue would frustrate the congressional mandate that conciliation efforts be fully undertaken before resort to the courts.

EEOC v. Kimberly-Clark Corp., supra, 511 F.2d at 1357. See also EEOC v. Cleveland Mills Co., supra, 502 F.2d at 156. Furthermore, we are not unmindful that a 180-day limitation period could provide incentive for recalcitrant employers to drag their feet during EEOC investigations so that a determination of reasonable cause could not be made within 180 days.

DuPont stresses that at the time the amendments were passed, Congress knew well there was a great backlog of charges pending with the Commission, that the statute was amended for the very purpose of eliminating this backlog and that a 180-day limitation amply serves this purpose. Several Congressional statements do reveal a concern over the growing workload in EEOC of-

14. 1972 U.S.Code Cong. & Ad.News 2137, 2139–40.

fices.[15] Indeed, Congress recognized that filings under this frequently utilized law were increasing year by year;[16] it knew the extent of EEOC's resources, and it was aware that many of EEOC's cases were of relatively ancient vintage. Yet Congress expressly made the 1972 amendments to Section 706 applicable to the many thousands of cases then pending before the Commission. Because Congress was aware of these facts, we conclude it would have enunciated an explicit provision for a 180-day limitation period on EEOC suits had it sought to use this proviso to break the administrative logjam.

### V.

Two additional arguments of duPont deserve comment. First, it argues that if EEOC's right to file suit continues beyond 180 days, then there is the possibility that duplicative actions may be filed during the private party's 90-day period to sue. DuPont points to various remarks in the legislative history expressing a concern over this possibility.[17] Suffice it to say that this "duplicate actions" argument poses no barrier to our holding that Section 706(f)(1) contains no 180-day limitation on the right of EEOC to seek court enforcement. Imposition of such a limitation is not the only answer to, or even the best means of implementing a policy against, duplicative lawsuits. *Ibid.* at 158.

DuPont also contends that a holding contrary to its contention would give EEOC an eternity in which to commence its action against an employer. Implicit in this argument is the assumption that it will somehow be prejudiced by substantial delay. We are mindful that Congress has limited back pay liability to a two-year period prior to filing a charge with the Commission. Moreover, the

court must reduce the award otherwise allowable by "[i]nterim earnings or amounts earnable with reasonable diligence . . . ." 42 U.S.C. § 2000e–5(g). Under these circumstances we cannot state, in the abstract, that prejudice by reason of stale claims will be visited upon employers. Suffice it to say we are not presented with a case or controversy at this time requiring a decision as to what defenses may be available to employers for EEOC's delay in commencing suit.

The judgment of the district court will be affirmed.

---

**15.** H.R.Rep.No.92–238, 92d Cong., 1st Sess. 12, 58–62 (1971); S.Rep.No.92–415, 92d Cong., 1st Sess. 5–6, 87 (1971); 1972 U.S.Code Cong. & Ad.News 2137, 2139–43, 2147.

**16.** 1972 U.S.Code Cong. & Ad.News 2137, 2139–40.

**17.** The district court advanced two possible constructions which would fill this statutory

interstice. Under one theory, the first to file is the primary plaintiff with the other restricted to intervention. The other construction would have EEOC's right to sue disappear during the 90-day period and revive at the end of the period. We, of course, express no opinion on a proper construction.