585 F.2d 421
 18 Fair Empl.Prac.Cas. 626, 18 Empl. Prac.
Dec. P 8696
Abram BRYANT, Individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
CALIFORNIA BREWERS ASSOCIATION, Miller Brewing Company,
Joseph Schlitz Brewing Company, Anheuser-Busch,
Incorporated, Pabst Brewing Company, Theodore Hamm Company,
General Brewing Company, Falstaff Brewing Corporation,
Teamster Brewery and Soft Drink Workers Joint Board of
California of the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, Local Union
856 of the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America in itself
and as successor to former Brewers Union Local 893 of the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Salesdrivers and Dairy
Employees Union Local 166 in itself and as successor to
former Brewers Union Local 893 of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Bottlers Union Local 896 of the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Beer Drivers and
Salesmen's Union Local 888 of the International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Drivers Union Local 203 of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Salesdrivers, Helpers, and Dairy
Employees Union Local 683 of the International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Defendants-Appellees.
 No. 75-1263.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 3, 1978.
 
 1
 James H. Wolpman (argued), of Romines, Wolpman, Tooby, Eichner, Sorensen & Constantinides, Palo Alto, Cal., for plaintiff-appellant.
 
 
 2
 Duane B. Beeson (argued), Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., Willard Z. Carr, Jr. (argued), Gibson, Dunn & Crutcher, Los Angeles, Cal., George Christensen (appeared), Overton, Lyman & Prince, James D. Madison, Los Angeles, Cal., (argued), Orrick, Herrington, Rowley & Sutclif, San Francisco, Cal., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before HUFSTEDLER and TRASK, Circuit Judges, and PREGERSON,* District Judge.
 
 PREGERSON, District Judge:
 INTRODUCTION
 
 5
 This appeal from the trial court's order dismissing the action pursuant to F.R.Civ.P. 12(b)(6) requires us to consider whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e Et seq., may be violated by a 20 year old provision in a statewide brewery industry collective bargaining agreement. That provision in effect preserves an all White class of permanent brewery employees by defining a permanent employee as a brewery worker employed for at least 45 weeks in one calendar year. Permanent employees enjoy valuable employment benefits denied temporary employees. We conclude that this provision may violate Title VII. Accordingly, we reverse the district court's order of dismissal and remand this case for further proceedings.
 
 
 6
 In 1968 plaintiff Abram Bryant, a Black person and a member of Teamsters' Local 856, got his first brewery worker's job with Falstaff Brewing Company in Northern California. Bryant earned his living working for Falstaff until 1973 when he went to work for Theodore Hamm Company. In 1974 when this action was filed, despite 6 years of brewery experience, Bryant was still classified as a temporary employee because of his inability to satisfy the 45-week provision in the collective bargaining agreement between all major California breweries and brewery unions.[1] Under this provision, found in section 4 of the agreement, a temporary employee must work 45 weeks in one calendar year before he is classified as permanent[2] and entitled to additional fringe benefits and greater job security. On its face the requirement appears innocuous. The rub is that changed circumstances in the brewery industry, including greater automation, improved brewing methods, and consolidation of breweries, have lessened the demand for labor, so that now it is virtually impossible for any temporary employee, Black or White, to work 45 weeks in one calendar year.
 
 
 7
 The effect of the 45-week requirement has been to deny Bryant and other similarly-situated Black brewery workers[3] the opportunity to be classified as permanent employees: no Black has ever attained permanent employment status in a California brewery. Bryant's second amended complaint therefore alleges that the requirement violates 42 U.S.C. § 2000e-2(a) and (c),[4] prohibiting employers and unions from discriminating with respect to employment on account of an "individual's race, color, religion, sex, or national origin," and 42 U.S.C. § 1981,[5] prohibiting racial discrimination in the making and enforcement of contracts.
 
 
 8
 Although Bryant's attack is directed primarily against the 45-week requirement, the complaint also alleges violations of § 2000e-2(a)(1) and (c) (2), i. e., that defendant breweries and defendant unions have discriminated against Blacks in hiring and referring them to available brewery jobs. Finally, the defendant unions, according to Bryant, have breached their duty of fair representation under 29 U.S.C. §§ 159(a) and 185(a) by negotiating an agreement containing discriminatory provisions.
 
 
 9
 The district court concluded that the procedures complained of by Bryant were analogous to the "last-hired, first-fired" practices permitted under Title VII[6] and granted defendants' motion to dismiss the action for failure to state a claim upon which relief can be granted. This appeal followed.PRELIMINARY ISSUES
 
 
 10
 At the outset, two preliminary issues call for consideration. First, we are asked to disallow the joinder of Southern California breweries as defendants because Bryant neither worked nor sought work in those breweries. Southern California breweries, however, are signatories to the statewide collective bargaining agreement and, as such, support and maintain the disputed contract provisions. Moreover, under the collective bargaining agreement Bryant and other Black brewery workers are eligible to work in Southern California breweries as well as in Northern California breweries. Accordingly, we find that the Southern California breweries have a sufficient connection with this lawsuit to justify their joinder under F.R.Civ.P. 20(a).
 
 
 11
 Second, defendants ask us to find that the district court lacks subject matter jurisdiction over this case. Title VII requires the Equal Employment Opportunity Commission (EEOC) to conciliate complaints within 180 days following the filing of the charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). At the end of the 180-day period, § 2000e-5(f)(1) permits the EEOC to issue a notice of right-to-sue authorizing the complainant to file suit in federal court. Bryant filed his charge with the EEOC on May 4, 1973. The EEOC issued a right-to-sue letter on July 23, 1973, 80 days later. Bryant then filed suit in the United States District Court for the Northern District of California on October 19, 1973, 12 days shy of 180 days. Defendants contend that the EEOC's failure to observe the 180-day time period bars plaintiff's claim on the Title VII charge.
 
 
 12
 Defendants' contention lacks merit. Section 2000e-5(f)(1) simply requires the EEOC to issue a notice of right-to-sue if it has failed to file suit or arrange a conciliation agreement within 180 days. Nowhere does the statute prohibit the EEOC from issuing such notice before the expiration of the 180-day period.
 
 
 13
 If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action . . . or entered into a conciliation agreement . . ., the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (in the appropriate United States District Court) . . . .
 
 
 14
 42 U.S.C. § 2000e-5(f)(1).
 
 
 15
 Furthermore, in 1973-1974 the undermanned EEOC staff faced a huge backlog of Title VII cases and, as a practical matter, was unable to handle Bryant's charges within the 180-day period. Given this state of affairs, it would be a travesty to require the EEOC and Bryant to mark time until 180 days were counted off.
 
 
 16
 Title VII "does not condition an individual's right to sue upon the EEOC's performance of its administrative duties." Jefferson v. Peerless Pumps, 456 F.2d 1359, 1361 (9th Cir. 1972). In the circumstances of this case, we decline to hold that Bryant's Title VII claim is barred by any lack of compliance with the procedural requirements of § 2000e-5(f)(1).
 
 
 17
 Having treated these preliminary matters, we now turn our attention to the question whether Bryant's complaint alleges a claim for relief under Title VII.
 
 TITLE VII ALLEGATIONS
 
 18
 Bryant was denied the opportunity to prove his Title VII allegations when the district court dismissed the action pursuant to F.R.Civ.P. 12(b)(6). For purposes of this appeal, the complaint is construed in the light most favorable to Bryant and its allegations are taken as true. 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1357 (1969).
 
 
 19
 After this case was first briefed and argued,[7] the Supreme Court decided three cases bearing on the Title VII claim: United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); East Texas Motor Freight Systems Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); and International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). These cases hold that a bona fide seniority system that applies equally to all workers and is free of an intent to discriminate on the basis of race, color, religion, sex, or national origin in its genesis, negotiation, and maintenance is immunized by § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h),[8] even though the system perpetuates the effects of racial discrimination predating the effective date of Title VII.[9] Defendants assert that the 45-week requirement is a bona fide seniority system. They argue that even if Blacks are now foreclosed from attaining permanent status, such a result merely perpetuates the effects of possible pre-Title VII racial discrimination. Thus, defendants conclude that § 703(h) validates this requirement.
 
 
 20
 The approach advanced by defendants overlooks the critical question whether the 45-week requirement, found in section 4 of the collective bargaining agreement, is in fact a seniority system or part of such a system. Section 4(a)(1) provides in part as follows: "A permanent employee . . . is any employee . . . who . . . has completed forty-five weeks of employment under this Agreement . . . in one calendar year as an employee of the brewing industry in this State. . . ." No comprehensive definition of "seniority system" is required to enable us to reject section 4(a)(1) as a seniority system, or as part of a seniority system, because, as will be shown, the provision lacks the fundamental component of such a system. Accordingly, we hold that section 4(a)(1) is not part of a seniority system, and therefore is not protected by section 703(h) against claims of nonintentional discrimination.
 
 
 21
 The fundamental component of a seniority system is the concept that employment rights should increase as the length of an employee's service increases. "Seniority is a system of employment preference based on length of service; employees with the longest service are given the greatest job security and the best opportunities for advancement." Aaron, Reflections on the Legal Nature and Enforceability of Seniority Rights, 75 Harv.L.Rev. 1532, 1534 (1962).[10]
 
 
 22
 In contrast, the brewery industry's 45-week requirement does not involve an increase in employment rights or benefits based upon the length of the employee's accumulated service. Under this requirement, employees junior in service to the employer may acquire greater benefits than senior employees. Although an employee must work at least 45 weeks before becoming a permanent employee, the acquisition of permanent status may be independent both of the total time worked and the overall length of employment. Some employees could acquire permanent status after only 45 weeks of work, if the 45 weeks were served in one calendar year. Other employees could work for many years and never attain permanent status because they were always terminated a few days before completing 45 weeks of work in any one year. This feature distinguishes the challenged system from the seniority system considered in Teamsters. In Teamsters, the use of different measures of seniority for different purposes meant that employees might have greater seniority rights for some purposes than for others. But employees with fewer weeks of service in a particular area (company or bargaining unit) could never acquire greater benefits within that area than employees with longer service there. Under the 45-week requirement, less senior employees could acquire greater rights regardless of whether one measures seniority by length of employment in a bargaining unit, plant, company, or industry.
 
 
 23
 Clearly, section 4(a)(1) does not provide for incremental increases in employment rights or benefits based on length of overall service. By its nature, the 45-week provision is an all-or-nothing proposition. Once an employee has worked 45 weeks in any calendar year, he is classified as a permanent employee. Until that time, it makes no difference how long a person has been employed by a department, plant, company, or industry, or how close he may have come to satisfying the 45-week requirement. So long as he does not happen to work 45 weeks in any particular calendar year, he remains a temporary employee. Unlike employees who must complete a probationary period before acquiring greater rights, temporary employees under the 45-week rule may never be able to achieve permanent status.
 
 
 24
 Under a seniority system, rights normally accrue automatically in the absence of resignation, termination, or transfer. Under the 45-week requirement, however, an employee's chances of satisfying the provision automatically terminate at the end of each year. This aspect of the 45-week requirement makes the system particularly susceptible to discriminatory application since employers and unions can manipulate their manpower requirements and employment patterns to prevent individuals who are disfavored from ever achieving permanent status. Because seniority rights under a true seniority system usually accumulate automatically over time, it is difficult to manipulate them in a discriminatory manner.
 
 
 25
 Section 4(a)(1) is simply a classification device that divides brewery industry employees into two groups. This conclusion is reinforced by the text of the collective bargaining agreement. Section 4(a)(1) is one of four subsections that define "five classes of employees." The classes of employees are permanent employees, temporary employees, temporary bottlers, apprentices, and new employees. The 45-week provision establishes a dividing line between two classes of these employees, temporary and permanent. Under separate provisions of the contract, each of the employees in these classes accumulates plant seniority from the date of first employment in the class. But plant seniority, unlike permanent status, depends only on the passing of time and accumulates incrementally and automatically. Thus, while the collective bargaining agreement does contain a seniority system, the 45-week provision is not a part of it.[11]
 
 CONCLUSION
 
 26
 Because the 45-week provision is not part of a seniority system, plaintiff is not required to prove any form of intentional discrimination to make out a Title VII violation. Instead, the normal rule applies that "a Prima facie Title VII violation may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." Teamsters, 431 U.S. at 349, 97 S.Ct. at 1861. The controlling principle is that such employment practices which have discriminatory impact violate Title VII. Griggs v. Duke Power Co., 401 U.S. 424, 429-31, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).[12]
 
 
 27
 If plaintiff is able to prove his averment that the provisions of the collective bargaining agreement were discriminatorily applied, he may then be entitled to relief under Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).
 
 
 28
 Accordingly, the judgment must be reversed and the cause remanded to give plaintiff the opportunity to prove that the 45-week provision had a discriminatory impact on Black workers in violation of Title VII, under standards enunciated in Griggs. On remand the district court should also consider whether plaintiff has made out a claim for relief under 42 U.S.C. § 1981 and 29 U.S.C. §§ 159(a) and 185(a).
 
 
 29
 Reversed and remanded for further proceedings consistent with the views herein expressed.
 
 
 30
 TRASK, Circuit Judge, dissenting.
 
 
 31
 I would respectfully dissent from Judge Pregerson's conclusion that the allegations in Bryant's pleadings could state a cause of action in light of the Supreme Court's decision in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). I would therefore affirm the district court's decision dismissing this action.
 
 
 
 *
 The Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The collective bargaining agreement was signed by all seven brewery defendants and all union defendants. It has statewide coverage. The agreement was negotiated on behalf of the breweries by defendant California Brewers Association and on behalf of the unions by defendant Teamsters Brewery and Soft Drink Workers Joint Board
 
 
 [2]
 Section 4(a)(1) of the collective bargaining agreement provides in part as follows: "A permanent employee . . . is any employee . . . who . . . has completed forty-five weeks of employment under this Agreement . . . in one calendar year as an employee of the brewing industry in this State. . . ."
 
 
 [3]
 Although filed as a class action, the matter has not been so certified pursuant to F.R.Civ.P. 23(c)(1)
 
 
 [4]
 42 U.S.C. § 2000e-2(a) provides:
 It shall be an unlawful employment practice for an employer
 (1) to fail or refuse to hire . . . any individual, or . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to . . . classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 42 U.S.C. § 2000e-2(c) provides:
 It shall be an unlawful employment practice for a labor organization
 (1) to . . . discriminate against, any individual because of his race, color, religion, sex, or national origin;
 (2) to . . . classify its membership . . . or to . . . fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee . . . because of such individual's race, color, religion, sex, or national origin; or
 (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.
 
 
 [5]
 42 U.S.C. § 1981 provides:
 "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."
 
 
 [6]
 See Watkins v. Steelworkers Local 2369, 516 F.2d 41 (5th Cir. 1975); Jersey Central Power & Light v. Local Union 327, 508 F.2d 687 (3rd Cir. 1975), Cert. denied 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir. 1974), Cert. denied 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976)
 
 
 [7]
 The parties were permitted to file additional briefs addressing the issues raised by these three cases
 
 
 [8]
 Notwithstanding other provisions of Title VII, § 703(h) provides in part that it shall not be an unlawful employment practice for an employer to apply different employment standards "pursuant to a bona fide seniority . . . system . . . provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e-2(h)
 
 
 [9]
 The effective date of Title VII is July 2, 1965
 
 
 [10]
 An employee's seniority rights generally are measured by his or her length of service in a particular area, whether it be a particular job unit ("unit seniority"), a plant ("plant seniority"), a company ("company seniority"), or even an industry. See Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 732 & n. 21 (5th Cir. 1976), which discusses methods used to calculate seniority in the context of formulating remedies for discrimination. Moreover, some seniority systems adopt a combination of these approaches, using different seniority measures for different purposes. For example, in Teamsters, company seniority was used to calculate employee benefits; bargaining unit seniority was used to determine order of layoffs
 
 
 [11]
 The 45-week rule is simply a classification device to determine who enters the permanent employee seniority line and this function does not make the rule part of a seniority system. Otherwise any hiring policy (E. g., an academic degree requirement) or classification device (E. g., merit promotion) would become part of a seniority system merely because it affects who enters the seniority line
 
 
 [12]
 Section 703(h) of Title VII does not protect seniority systems that are themselves discriminatory or that had their genesis in racial discrimination. Because we have held that the 45-week provision was not part of a seniority system, we are not required to address the question whether the provision was part of an unprotected seniority system, i. e., one that is not bona fide