**Kimberly C. PEARCE, et al.**

**v.**

**BARRY SABLE DIAMONDS, a trade name for U.S. Metal & Coin & Jewelry Co., Inc., et al.**

**No. 94–6856.**

United States District Court,
E.D. Pennsylvania.

Jan. 5, 1996.

As Amended January 9, 1996.

---

Benjamin Folkman, Van Syoc Law Offices, Philadelphia, PA for plaintiffs.

Anthony B. Haller, Pepper, Hamilton & Scheetz, Philadelphia, PA for defendant.

*MEMORANDUM*

DALZELL, District Judge.

I. *Introduction*

Plaintiffs Kimberly Pearce, Susan Nitz, and Janice Phillips have charged Barry Sable Diamonds and its proprietor, Barry Sable (collectively "Sable"), with sex discrimination. Sable believes that plaintiffs de-

prived this Court of subject-matter jurisdiction when they sought right-to-sue letters a day after they first filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). His summary judgment motion[1] calls into question the validity of a regulation that the EEOC issued in September of 1977. This regulation, 29 C.F.R. § 1601.28(a)(2), authorizes the "early" right-to-sue letter, *i.e.*, a right-to-sue letter issued before the 180 days of 42 U.S.C. § 2000e–5(f)(1) expires. *See* Note, *The Early Right-to-Sue Letter: Has the EEOC Exceeded its Authority?*, 72 Wash. U.L.Q. 757 (1994).

Questions of the validity of the early right-to-sue letter have confounded district courts since enactment of the regulation in 1977.[2] Two courts of appeals have found no infirmity in section 1601.28(a)(2). *Bryant v. California Brewers Assoc.*, 585 F.2d 421, 424 (9th Cir.1978), *judgment vacated on other grounds*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059 (11th Cir.1994). The United States Court of Appeals for the Third Circuit has frowned on the regulation, albeit in dicta. *Moteles v. University of Pennsylvania*, 730 F.2d 913, 916–17 (3d Cir.), *cert.*

*denied*, 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984).

If we were writing on a blank slate, we would find that the EEOC exceeded its authority when it issued section 1601.28(a)(2) and that the EEOC has no power to authorize a plaintiff to file an employment discrimination claim before the 180 days of 42 U.S.C. § 2000e–5(f)(1) expires. We would therefore grant Sable's motion, place this case in our civil suspense docket, and remand plaintiffs' claims to the EEOC for investigation and attempted conciliation. That course would not lead to an appealable order, however, and would only increase the cacophony in the district courts. Moreover, practical considerations make conciliation an unlikely option for now.[3] Instead, we shall certify three questions for appellate review, so that the Third Circuit may have an opportunity to address in a holding what it addressed eleven years ago in dicta.

## II. Factual Background

■ We take the following facts from the documents that both sides have presented to us. We also will take as true the factual proffers that plaintiffs and their counsel have made in affidavits.[4]

---

1. We will treat Sable's motion as a motion to dismiss for lack of jurisdiction rather than for summary judgment. The distinction is important, for two reasons. First, a grant of summary judgment is a judgment on the merits of a case, but a jurisdictional inquiry is unrelated to the merits. *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 n. 6 (3d Cir.1987). Moreover, while Sable would bear the burden of persuading this Court that summary judgment is appropriate, plaintiffs bear the burden of persuading this Court that we have jurisdiction over the subject matter. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Of course, we may consider Sable's jurisdictional inquiry even at this late date. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

2. See Note, *The Early Right-to-Sue Letter: Has the EEOC Exceeded its Authority?*, 72 Wash. U.L.Q. 757, 759 (1994) ("[T]he district courts have debated the issue for nearly twenty years."). Two recent cases are *Henschke v. New York Hospital—Cornell Medical Center*, 821 F.Supp. 166, 170–71 (S.D.N.Y.1993) (holding the regulation

invalid, and remanding for submission to the EEOC), and *DeFranks v. Court of Common Pleas of Fayette County*, No. 95–327, 1995 WL 606800, at *6–*7 (W.D.Pa. August 17, 1995) (holding the regulation valid). The most significant district court case that held the regulation invalid is *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739 (S.D.N.Y.1980), which we discuss in detail below.

3. On January 4, 1996, Sable was sentenced to a prison term of four months for one count of federal income tax evasion. *United States v. Sable*, Crim. No. 95–106–1 (E.D.Pa. January 4, 1996). He must surrender to the United States Bureau of Prisons on February 1, 1996.

4. In a jurisdictional inquiry, a court has the power to hold hearings and find facts. *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1281 nn. 4–5 (3d Cir.1993). As we explain below, however, one of the central questions of our jurisdictional inquiry in this case is the extent to which we may question EEOC factual determinations. We have chosen not to hear the live testimony of the EEOC officials involved because the regulation at issue appears not to allow such an inquiry.

On May 5, 1994, Kimberly Pearce and Susan Nitz walked into the EEOC's Philadelphia District Office and completed charges of discrimination against Sable, their former employer. Defs.' mot. exs. A–B (EEOC case logs); *see also* pls.' resp. exs. A–B, D–E (EEOC Intake Questionnaires and Charges of Discrimination). Another former employee, Janice Phillips, had begun corresponding with the EEOC in late March, 1994, and this correspondence led to a charge of discrimination on or about May 3, 1994. Defs' mot. ex C (EEOC case log); *see also* pls.' resp. exs. G–J (correspondence and Charge of Discrimination).

On May 6, 1994, plaintiffs' counsel called Joseph Danese, the EEOC investigator assigned to the Pearce and Nitz cases, and requested right-to-sue letters for Pearce, Nitz, and Phillips. Defs' mot. ex. D. On May 10, 1994, counsel sent a letter that memorialized his request. *Id.* ex. E (5/9/94 memorandum to file from Joseph Danese). Danese then spoke with Brenda Smith, the EEOC investigator assigned to the Phillips case, and asked her to reassign that case to him.[5] *Id.* At the time of the request, Danese told Pearce that he had "thirty or forty" cases in front of hers. Pearce aff. ¶ 2.

On May 27, 1994 the EEOC issued right-to-sue letters in all three cases. Defs.' mot. exs. A–C. Johnny J. Butler, the EEOC District Director, certified in all three cases that although "[fewer] than 180 days have expired since the filing of this charge, ... I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge." *Id.* With that, the EEOC officially terminated its investigation of plaintiffs' charges. *Id.*

---

5. We know these facts because of an internal memorandum that Danese wrote on May 9, 1994:

On Friday, May, 6, 1994 I received a call from Charging Parties attorney wanting to know the procedure for requesting a RTS. I informed him that if he wanted a RTS, [h]e should request the same in writing for Nitz and Pearce. He then mentioned a third charging party (Phillips). I asked him if he knew the Investigator, he said B. Smith. I asked him if he also wanted a RTS for her, he said yes. I told him to include her name in the same letter. I gave him our fax number and told him he could fax it to me.

I then checked with Brenda Smith, she stated that she mailed Phillips a charge and was waiting to receive the signed document back from her. She called her that same day and was told that the charge was in the mail. I told her to inform Benji to assign it to me, since I have the other two.

Defs.' mot. ex. D.

---

### III. *Statutory and Regulatory Framework, and Legal Analysis*

#### A. *Statutory and Regulatory Framework*

■ The EEOC exists to attempt to prevent employment discrimination. 42 U.S.C. § 2000e–5(a); *see also Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 357–59, 97 S.Ct. 2447, 2450–51, 53 L.Ed.2d 402 (1977); *Moteles v. University of Pennsylvania*, 730 F.2d 913, 917 (3d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). Congress established the EEOC on twin premises, to wit, that "[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases" and that "the sorting out of the complexities surrounding employment discrimination can give rise to enormous expenditure of judicial resources in already heavily overburdened Federal district courts." *Moteles*, 730 F.2d at 917 (citing Title VII legislative history). The result of these goals is 42 U.S.C. § 2000e–5(b), which directs the EEOC to investigate charges of employment discrimination and "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

Administrative involvement can occasion administrative delay, however, and Congress settled on 180 days as the *via media* between the need for the former and the fear of the latter. 42 U.S.C. § 2000e–5(f)(1) establishes, in relevant part:

[I]f within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify

the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

Thus, if after 180 days the EEOC has not either resolved the charge of discrimination or filed a civil action of its own, then the employee need not await further administrative action.

In early interpretations of § 2000e–5(f)(1), some courts, including the Supreme Court, had suggested that the 180–day period was mandatory, and that an employee could not file suit before its expiration. *See, e.g., Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361, 97 S.Ct. 2447, 2452, 53 L.Ed.2d 402 (1977) ("The 180–day limitation provides ... that [a] private right of action [under 42 U.S.C. § 2000e–5(f)(1) ] does not arise until 180 days after a charge has been filed.... [A] complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but ... he must wait 180 days before doing so."); *id.* at 366 ("An aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed.").[6]

Two later events—one judicial, the other regulatory—undercut the strict 180–day rule. First, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that the 180–day period is not jurisdictional, but, rather, is subject to the equitable considerations of estoppel, waiver, and laches. Significantly, *Zipes* made no mention of the language from *Occidental Life* that we have quoted above, thus confirming that language's status as dicta, not holding. Cases from this Circuit confirm that failure to adhere to § 2000e–5(f)(1) will not necessarily bar a plaintiff's suit.[7]

Second, in 1977 the EEOC published a regulation that allows it to issue right-to-sue letters before the expiration of 180 days. In its most recent iteration, this regulation instructs:

When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, ... the Commission may issue such notice as described in § 1601.28(e) with copies to all parties, at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that *the District Director [or certain other EEOC officials] has determined that it is probable* that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.28 (1995) (emphasis added).[8] The underlined text gives complete (and presumably unreviewable) discretion to EEOC District Directors[9] to grant early right-to-sue letters, as long as the District Director believes that it is "probable" that the agency will not complete its administrative process within 180 days.

---

**6.** Of course, nothing in the statute or case law prevents a charging party from allowing the administrative process to run its course. *Occidental Life* held only that the EEOC may bring an enforcement action even after the 180–day period expires. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 366, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977).

**7.** Thus, for example, if an employer discriminates against an employee while that employee has an outstanding charge of discrimination, the employee need not wait an additional 180 days before bringing suit for the second act as long as the two acts are related. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). Similarly, under the "continuing violation" theory, an employee can recover for discrimination that occurred years before her suit, as long as at least one act occurred within the 180–day period. *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir.1995).

**8.** For the purposes of Sable's motion, there is no significant difference between the most recent iteration of the regulation and the regulation as originally proposed in the *Federal Register*. Compare *29 C.F.R. § 1601.28(a)(2) (1995)* with *42 Fed.Reg. 42,022, 42,029–30 (1977)*.

**9.** Because Johnny J. Butler, the EEOC District Director for Philadelphia, signed the plaintiffs' right-to-sue letters, we omit the titles of the other authorized officials merely for the sake of brevity.

## B. *Legal Analysis*

When it enacted Title VII, Congress granted the EEOC the power "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e–12(a). Section 1601.28(a)(2) is such a regulation. These regulations are valid as long as they are reasonably related to the purposes of Title VII. *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 115–16, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988).

Courts that have upheld the reasonableness of section 1601.28(a)(2) have invariably focused on the EEOC's justification for issuing it, *i.e.*, "the legal principle that a party is not required to perform a useless act, *i.e.*, wait for the passage of 180 days when the passage of such time will not accomplish any purpose." 42 Fed.Reg. 47,828, 47,831 (1977).

Plaintiffs have pointed to two cases on which they rely in opposing Sable's motion.[10] In *Bryant v. California Brewers Assoc.*, 585 F.2d 421, 424 (1978), *judgment vacated on other grounds*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980), the Ninth Circuit held that it would be a "travesty" to require an employee to "mark time until 180 days were counted off". *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir.1994), followed similar reasoning. Both cases also described the EEOC backlogs as "huge". *Bryant*, 585 F.2d at 424; *Sims*, 22 F.3d at 1061.[11]

The district court cases that have held that section 1601.28(a)(2) is invalid have focused on the negative effects arising out of the regulation's grant of broad discretion. An early (and still the best-reasoned) decision is *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739 (S.D.N.Y.1980). In *Spencer*, the EEOC issued a right-to-sue letter one month after an employee filed her charge. *Id.* at 741. The EEOC justified this early right-to-sue letter on its backload of 700 cases. *Id.* Judge Sofaer remanded the case to the EEOC for investigation and attempted conciliation. *Id.* at 748.

Some of the reasoning of *Spencer* (and of many of the early cases holding the regulation invalid) is based on the outdated reasoning that the 180–day period of 42 U.S.C. § 2000e–5(f)(1) is jurisdictional. Four points, however, remain good policy and continue to make good sense, and we will consider them in turn.

First, 180 days of administrative delay simply cannot be a "travesty", the Ninth Circuit's hyperbole notwithstanding. *Bryant*, 585 F.2d at 425. As we have described above, Congress established what it regarded as the proper balance between the administrative process and administrative delay. *See* 42 U.S.C. § 2000e–5(f)(1). In the worst-case scenario, *i.e.*, when the EEOC can take absolutely no action on a case for the entire 180 days, an employee may simply bring her suit after that time passes, and is in no worse a position than those employees who do not receive right-to-sue letters.

---

**10.** Plaintiffs also argue that the EEOC administrative process would have been useless because Sable has never offered to reconcile these claims. *See* Folkman aff. ¶ 3; pls.' resp. ex. N (3/23/95 settlement demand). This argument, even if true, misses the mark for two reasons. First, nothing in the record suggests that plaintiffs tried to reconcile their claims while the EEOC process was pending; indeed, it is highly unlikely that serious negotiations could have occurred in the hours between the docketing of the charges and the request for the right-to-sue letters. Second, and more fundamentally, plaintiffs' argument points out that *Sable* lost rights that Title VII guarantees him. The conciliation process offers defendants the ability to resolve claims with a minimum of cost and public scrutiny. *See, e.g.*, *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739, 747 (S.D.N.Y.1980). The EEOC regulation contains no protection for the defendant who seeks the EEOC's investigation and reconciliation rather than federal court litigation. *Id.*

**11.** *Sims* suggested *two* Circuits other than it "hold contrary to the district court" that it reversed. *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir.1994). *Sims* then cites *Bryant* and other Ninth Circuit cases, and a Second Circuit case, *Weise v. Syracuse University*, 522 F.2d 397, 412 (2d Cir.1975). *Weise* actually has nothing to do with section 1601.28(a)(2), since the Second Circuit decided the case two years before the EEOC proposed the regulation. *Weise* is just the analog of *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984), and stands more properly for the proposition that the time limitations of 42 U.S.C. § 2000e–5(f)(1) are not jurisdictional. Thus, we believe that only two circuits have held section 1601.28(a)(2) valid.

*Spencer*, 87 F.R.D. at 744–45.[12] In cases in which the EEOC begins its investigation but cannot complete it, the employee receives at least the partial benefit of the EEOC's actions.

Second, the EEOC's probabilistic determinations will result in a self-fulfilling prophecy, with a corresponding decrease in the EEOC's efficiency. In the absence of section 1601.28(a)(2), employees faced with EEOC backlogs would "naturally press the agency for action, rather than for early right-to-sue letters. The agency, in turn, will be spurred by that pressure and work to improve its efficiency." *Id.* at 746.

In this case, for example, Danese, the EEOC investigator, told one of the plaintiffs that "it would take over one year to get to my case as there were thirty or forty cases ahead of mine." Pearce aff. ¶ 2. If "thirty or forty" cases renders an investigator's backload "huge" such that it is "probable" that the administrative process will not conclude in 180 days, how much lower can that number be before serious questions arise concerning the EEOC's efficiency? *Cf. Spencer*, 87 F.R.D. at 741 (approximately 700 matters pending).

On a more fundamental level, we question whether the EEOC *could* determine whether "thirty or forty" cases would prevent an investigator from beginning another investigation for 180 days. As every district judge knows, cases are *sui generis.* Cases that appear simple sometimes require protracted effort, and others that appear complex resolve themselves quickly and easily. Moreover, unlike a lawsuit, EEOC proceedings are informal, and the EEOC therefore does not resolve motions, conduct trials, or adhere to the Federal Rules of Civil Procedure.[13]

Third, section 1601.28(a)(2) grants an unreviewable discretionary power to the EEOC. Judge Sofaer's comments in this regard are particularly trenchant:

> The Commission appears to have given no thought ... to how its regulation will be administered. The regulation creates an important new discretionary power, to be exercised in favor of some complainants and not others. It not only permits the agency to ignore part of its workload, but also enables certain agency officials to determine which part of the workload to ignore and which to address. If bureaucrats are anything like judges, they will choose to pursue the more interesting and manageable cases, and to give up the mundane and bothersome ones.

*Spencer*, 87 F.R.D. at 748. We agree that it is likely that, over time, the EEOC's decision to issue early right-to-sue letters will come to depend less on the probability of a charge's completion and more on unrelated factors.

The breadth of discretion that the regulation confers on the EEOC becomes clear when viewed in the light of the EEOC's brief discussion before its enactment during the notice-and-comment period in 1977. When one commenter questioned the agency's authority to grant early right-to-sue letters, the EEOC responded:

> The Commission is willing to issue notices before 180 days *when it is clear* that the administrative process cannot be completed, based on the legal principle that a party is not required to perform a useless act, i.e., wait for the passage of 180 days when the passage of such time will not accomplish any purpose.

---

12. For institutional reasons, requiring an employee to wait the entire 180 days would not be "purposeless" even if the EEOC can take no action in a case during that time. "If complainants are required to remain before the agency for 180 days, the primary role of the agency in handling such claims is emphasized and assured." *Spencer*, 87 F.R.D. at 746.

13. In 1994, plaintiffs filed 9,187 civil actions in the Eastern District of Pennsylvania, resulting in 379 civil cases per authorized judgeship for that year. Administrative Office of the United States

Courts, *1994 Federal Court Management Statistics* 57 (1995). The average time from filing through disposition was 10 months (or, roughly, 300 days). *Id.* Thus (assuming that Danese's caseload was typical for an EEOC investigator in the Philadelphia District Office), each judge in the Eastern District resolves roughly ten times the number of cases on an EEOC investigator's docket in less than twice the 180–day time limit under which those investigators operate. As noted, EEOC investigators do not labor under the burden of the formalities of federal court practice.

42 Fed.Reg. 47,828, 47,831 (1977) (emphasis added). The actual regulation, however, requires only that the agency's inability to process a charge be "probable", not "clear". Moreover, even though reasonable people might dispute what is merely "probable", that dispute is irrelevant under the regulation, which grants the District Director the sole power to "determine[ ]" the probability of the event. The language of the regulation would appear to afford no room for this Court to question the probabilistic assessment of the District Director, as long as he signs the certification.[14]

Significantly, there is nothing in the record before us to show that any of the EEOC officials involved—Danese, Smith, or Butler—undertook the slightest investigation to determine the difficulty of the pending cases, or whether any of the cases were related (*e.g.*, filed by the same employee or against the same employer) or otherwise amenable to conciliation. Taken as a whole, Danese's memorandum, *see supra* note 5, suggests that issuance of the early right-to-sue letters in these cases was a mere formality, with none of the reflection, discussion, and consideration that section 1601.28(a)(2) supposedly requires.[15] For example, there is nothing to show that Danese and Smith discussed whether Smith could process the Phillips charge within 180 days before Smith transferred the Phillips case to him.

Finally, section 1601.28(a)(2) "in effect permits the agency to expand federal jurisdiction whenever an aggrieved claimant is impatient with the normal waiting period and the agency feels unable to complete its tasks within the statutory period." *Spencer,* 87 F.R.D. at 746–47. This fact, coupled with the bureaucrat's (and judge's) natural inclination "to pursue the more interesting and manageable cases, and to give up the mundane and bothersome ones", *id.* at 746, suggests that the cases in greatest need of informal conciliation are precisely the cases that the agency will pass over. Use of the power of section 1601.28(a)(2) will also grow as demands on the agency's time become greater. *See, e.g., McCullough v. Branch Banking & Trust,* 35 F.3d 127, 131 (4th Cir.1994) (noting that, under § 12117(a) of the Americans With Disabilities Act, 42 U.S.C. § 12101–12213, litigants must first present their claims to the EEOC), *cert. denied,* —— U.S. ——, 115 S.Ct. 1101, 130 L.Ed.2d 1069 (1995); *Spence v. Straw,* 54 F.3d 196 (3d Cir.1995) (holding that litigants suing under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, must first present their claims to the EEOC).

### C. *The Third Circuit's Treatment of Section 1601.28(a)(2)*

The Third Circuit has addressed section 1601.28(a)(2) once before. In *Moteles v. University of Pennsylvania,* 730 F.2d 913, 916–18 (3d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984), our Court of Appeals examined *Spencer*'s "thoughtful" reasoning. *Id.* at 917. In dicta, the Court

---

**14.** The EEOC's discretion is a luxury that district courts do not share. *Instructional Systems, Inc. v. Computer Curriculum Corp.,* 35 F.3d 813, 819 (3d Cir.1994) ("It is a general rule that 'federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred.' ... 'The federal courts' obligation to adjudicate claims within their jurisdiction is virtually unflagging.' ") (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995). Nor is it correct that the district courts operate free from time constraints. *See* Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–82; United States District Court for the Eastern District of Pennsylvania, *Civil Justice Expense and Delay Reduction Plan* (1991).

**15.** In June, 1994, Sable requested that the EEOC send all documents relating to plaintiffs' charges of discrimination pursuant to the Freedom of Information Act, 5 U.S.C. § 552. We have reviewed the EEOC's entire response, and it nowhere reveals, *e.g.,* an assessment of the individual investigators' caseloads or a calculation of the time needed to begin the administrative process. The only relevant document in the EEOC's response that was not included in Sable's motion is a form memorandum from Danese to Alfred Harris, Enforcement Manager, dated May 27, 1994. Under "Reason for dismissal or closure recommendation (check reason)", Danese checked "NTRS requested". The "comments" and "explanation" sections on all three copies of the memorandum are blank. The EEOC's cover letters show that the agency did not withhold any documents from its response to Sable's request. *See* 5 U.S.C. § 552(b).

Because of the sensitive nature of some of these documents, we have filed them under seal this day.

emphasized the importance of the administrative process:

> [P]remature resort to the district court should be discouraged as contrary to congressional intent. The preference for conciliation as the dispute resolution method in employment discrimination proceedings should not be undermined by a party's deliberate by-pass of administrative remedies. Accordingly, the plaintiff's actions in foreclosing EEOC conciliation efforts is one factor to be considered in determining whether equitable relief should be granted.

*Id.*[16] Significantly, the Third Circuit recognized that the 180–day period is not jurisdictional, *id.,* and therefore the persuasiveness of *Spencer* does not rest on that admittedly erroneous ground.

■ Normally, even dicta from the Court of Appeals would compel us to remand this action to the EEOC for investigation and attempted conciliation. The Third Circuit has clearly expressed a preference for exhaustion of the administrative process, and it has recognized that "premature resort" to federal court is "contrary to congressional intent". *Id.* at 917. Such a course would not lead to an appealable order, however, and would not resolve the important questions section 1601.28(a)(2) raises.[17]

## IV. *Conclusion*

42 U.S.C. § 2000e–5(b) instructs that the EEOC "shall make an investigation" of alleged employment discrimination and, if it finds cause to do so, "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 29 C.F.R. § 1601.28(a)(2), in essence, grants the EEOC the discretion not to do this job. In some cases, perhaps, it may be clear to all that the EEOC will be unable to complete its task within the time that Congress has given it.

Yet we believe that the agency must nevertheless try to do the job Congress assigned to it.

The regulation also appears to grant 29 C.F.R. § 1601.28(a)(2) unreviewable discretion to certain EEOC officials. The fora that bear the brunt of the exercise of that discretion appear to have no power to second-guess the EEOC's determination. In its operation we believe that the regulation skews the balance that Congress sought to achieve between administrative and judicial resolution of employment discrimination claims. Cases such as *Bryant* and *Sims* understate the effect of the regulation on the business of the federal court. In *Moteles,* the Third Circuit took a more realistic view of the operation of the regulation (and of the use to which unscrupulous plaintiffs might put it).

We believe that this case presents an excellent opportunity for our Court of Appeals to resolve an issue that has confounded the district courts. Thus, we shall certify the following questions for appellate review:

1. Is 29 C.F.R. § 1601.28(a)(2), which authorizes certain EEOC officials to issue right-to-sue letters before the expiration of the 180 days of 42 U.S.C. § 2000e–5(f)(1), a valid regulation?

2. Does a district court have the power to remand claims of employment discrimination to the EEOC for investigation and attempted conciliation, if it appears to the district court that the EEOC can likely complete the administrative process within 180 days?

3. Does 29 C.F.R. § 1601.28(a)(2) preclude the district court from requiring the EEOC to establish the probability that it cannot complete the administrative process within 180 days, or is the certification of an

---

**16.** This language is dicta because the Court decided the case on other grounds. *See id.* at 917–18.

**17.** Sable asks us to dismiss this case with prejudice, and he argues that the plaintiffs engaged in a "deliberate by-pass" of the administrative process. *Moteles,* 730 F.2d at 917. Certainly this case is a good candidate for such a ruling, since plaintiffs' counsel requested right-to-sue letters a

day after filing two charges, and before the third was even complete. We hesitate to rely on the dicta of the Court of Appeals to take such drastic action despite the few hours between the filing of the charges and the request for the right-to-sue letters, since it appears to us that plaintiffs and their counsel did only what the regulation allows them to do.

authorized EEOC official sufficient to establish that fact?

An appropriate Order follows.[18]

## ORDER

AND NOW, this 5th day of January, 1996, upon consideration of defendants' motion for summary judgment, and plaintiffs' response thereto, and treating the motion as one to dismiss for lack of jurisdiction, and for the reasons stated in the accompanying memorandum, and the Court finding that:

(a) In this case, plaintiffs, all of whom allege sex discrimination, received right-to-sue letters well before the expiration of the 180 days as specified in 42 U.S.C. § 2000e–5(f)(1);

(b) In issuing the "early" right-to-sue letters, the Equal Employment Opportunity Commission relied upon 29 C.F.R. § 1601.28(a)(2);

(c) Two courts of appeals have held the regulation valid, *Bryant v. California Brewers Assoc.,* 585 F.2d 421, 424 (9th Cir.1978), *judgment vacated on other grounds,* 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Sims v. Trus Joist MacMillan,* 22 F.3d 1059 (11th Cir.1994), but the United States Court of Appeals for the Third Circuit has questioned the validity of the regulation in dicta, *Moteles v. University of Pennsylvania,* 730 F.2d 913, 916–17 (3d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984);

(d) The validity of the regulation is a question that has seriously divided the district courts for nearly twenty years, *compare Henschke v. New York Hospital—Cornell Medical Center,* 821 F.Supp. 166, 170–71 (S.D.N.Y.1993) (holding the regulation invalid, and remanding for submission to the EEOC) *and Spencer v. Banco Real, S.A.,* 87 F.R.D. 739 (S.D.N.Y.1980) *with DeFranks v. Court of Common Pleas of Fayette County,* No. 95–327, 1995 WL 606800, at *6–*7 (W.D.Pa. August 17, 1995);

(e) If the regulation is invalid, we must remand this action for investigation and attempted conciliation by the EEOC, and, if the regulation is valid, serious questions exist about a district court's ability to question the EEOC's determinations pursuant to the regulation;

(f) Thus, the issues raised in defendants' motion involve "controlling questions of law as to which there is substantial ground for difference of opinion", and "an immediate appeal from th[is] order may materially advance the ultimate termination of the litigation", 28 U.S.C. § 1292(b);

It is hereby ORDERED that:

1. The motion is provisionally DENIED;

2. We CERTIFY the following questions to the United States Court of Appeals for the Third Circuit:

1. Is 29 C.F.R. § 1601.28(a)(2), which authorizes certain EEOC officials to issue right-to-sue letters before the expiration of the 180 days of 42 U.S.C. § 2000e–5(f)(1), a valid regulation?

2. Does a district court have the power to remand claims of employment discrimination to the EEOC for investigation and attempted conciliation, if it appears to the district court that the EEOC can likely complete the administrative process within 180 days?

3. Does 29 C.F.R. § 1601.28(a)(2) preclude the district court from requiring the EEOC to establish the probability that it cannot complete the administrative process within 180 days, or is the certification of an authorized EEOC official sufficient to establish that fact?

3. All proceedings herein are STAYED pending final resolution of this appeal.

---

**18.** We refer the parties to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5(a).