Lesia FIGUEIRA, Plaintiff,

v.

BLACK ENTERTAINMENT TELEVI-
SION, INC. and Paige Publications (a
wholly owned subsidiary of BET), De-
fendants.

No. 96 Civ. 3190 (MBM).

United States District Court,
S.D. New York.

Nov. 1, 1996.

**300**

Curtis Harger, New York City, for Plaintiff.

Susan Schenkel–Savitt and Sara E. Gold, Winston & Strawn, New York City, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Lesia Figueira sues Black Entertainment Television, Inc. and its wholly owned subsidiary, Paige Publications (collectively "BET"), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, including the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Plaintiff also sues for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615 *et seq.*, New York State Executive Law § 296 and the New York City Administrative Code § 8–101. Defendant moves to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons stated below, defendant's motion to dismiss is denied.

### I.

The following assertions, presumed true for the purposes of this motion, are taken from plaintiff's complaint: Figueira is female and a citizen of New York. (Compl. ¶ 8) BET is a New York corporation with its principal place of business at 380 Madison Avenue, 20th Floor, New York, New York. (*Id.* ¶ 9)

Figueira started working for BET in August 1993 as an account executive. Her primary duty was to sell advertising in BET's publication, *YBS Magazine.* Plaintiff performed her duties well, and achieved a high volume of sales. (Compl. ¶ 11) On or about January 1, 1995 plaintiff told her immediate supervisor that she was pregnant and would give birth sometime in August 1995. Plaintiff also told her supervisor that she would take maternity leave as authorized by the FMLA. (Compl. ¶ 12) Shortly thereafter, Figueira's supervisor informed her that an Executive Vice President of BET, when informed of Figueira's request for maternity leave, had "expressed concern .. and challenged whether plaintiff's absence should be approved." (Compl. ¶ 13)

Before plaintiff informed her supervisor that she was pregnant, plaintiff had no adverse disciplinary action in her personnel record. (Compl. ¶ 14) However, after she told her supervisor about her pregnancy, BET's attitude towards her turned critical and negative, and BET personnel made "unsubstantiated charges of misconduct." (*Id.* ¶¶ 14, 15) Based upon these charges, defendant terminated plaintiff's employment on April 28, 1995. (*Id.* ¶ 15) Plaintiff was replaced by a non-pregnant female sometime in August 1995. (*Id.* ¶ 17)

On January 31, 1996, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 5) On February 15, 1996 the EEOC issued plaintiff a notice of right to sue, signed by Spencer H. Lewis, District Director of the EEOC, stating that although less than 180 days had expired since plaintiff filed her charge, he had determined that the Commission would be unable to complete its administrative process within 180 days. (Compl. ¶ 6, Ex. A) Plaintiff filed a complaint in this court on May 1, 1996, claiming that she was fired because she was pregnant and expressed a wish to take maternity leave.

BET now moves to dismiss. BET claims that plaintiff's Title VII claim is barred by the applicable statute of limitations, or in the alternative must be remanded to the EEOC. BET argues also that plaintiff's FMLA claim must be dismissed because plaintiff is not an eligible employee under the Act. Defendant argues also that all claims for punitive damages, other than that based on alleged Title VII violations, must be dismissed. Finally,

defendant argues that the court should dismiss all pendent state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## II.

### A. *Title VII—Statute of Limitations*

BET argues that plaintiff failed to file her Title VII charge with the EEOC within the applicable limitations period. Although the general time limitation for EEOC filings is 180 days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e–5(e)(1), if the discrimination took place in a state or locality with an agency authorized to grant or seek relief from discrimination, and the complainant has filed a charge with that agency, that time limitation is extended to 300 days. *Id.* However, in a state with its own agency, no charge may be filed with the EEOC "before the expiration of 60 days after proceedings have been commenced under State or local law...." 42 U.S.C. § 2000e–5(c). The EEOC charge may be filed before 60 days from the filing with the state agency only if the state agency has "terminated" its proceedings. *Id.*

In *Equal Employment Opportunity Commission v. Commercial Office Prods. Co.*, 486 U.S. 107, 121, 108 S.Ct. 1666, 1674, 100 L.Ed.2d 96 (1988), the Supreme Court stated that when a charge is filed initially with the EEOC in a state with a fair employment practices agency, the EEOC holds the charge in "suspended animation" until either 60 days have elapsed or the state proceeding is terminated. 486 U.S. at 113, 108 S.Ct. at 1670. Therefore, in a state with a fair employment practices agency, to file in a timely fashion with the EEOC—within 300 days of the alleged discriminatory practice—a complainant must actually file with the EEOC within 240 days of the alleged discriminatory practice, because the EEOC holds the charge in "suspended animation" for 60 days. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980).

However, if the state terminates its proceedings, a charge filed with the EEOC between 240 and 300 days after the alleged discriminatory practice would be timely filed. The *Mohasco* Court stated:

If a complainant files later than that [240 days after the discriminatory conduct] (but not more than 300 days after the practice complained of), his right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300 day period.

*Id.* Further, in *Commercial Office Prods.* the Court held that a state agency's "waiver" of its exclusive 60–day period pursuant to a Workshare Agreement between the EEOC and the state agency is a "termination" of the state proceeding. Thus, in a state with its own fair employment practices agency, a plaintiff's filing with the EEOC between 240 and 300 days after the discriminatory practice is timely if the state waives its exclusive 60–day period.

Defendant argues first that plaintiff failed to file with the EEOC within the 300–day outer limit set by § 2000e–5(e)(1). BET argues that the alleged "unlawful employment practice" in this case—discrimination based on plaintiff's pregnancy—occurred in January 1995, when BET's conduct towards the plaintiff changed. Defendant argues that plaintiff should have been aware of its negative and critical attitude by March 1995 at the latest. Although "the timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action," charges based on any discriminatory acts or practices which fall within the 300 days preceding the filing of an EEOC charge are timely filed—even if there were acts that occurred before the 300 days which would give rise to charges that would not be timely filed. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996). Here, plaintiff filed her charge with the EEOC on January 31, 1996. Accordingly, any charges based on discriminatory employment practices which occurred between April 6, 1995 and January 31, 1996 are timely filed. Plaintiff was fired on April 28, 1995, 278 days before she filed her charge. Further, plaintiff alleges only that it was termination of her employment, and not the negative and critical conduct of BET, which constituted discrimination. Indeed, on her EEOC charge, in the box labelled "Date

Discrimination Took Place," plaintiff listed April 27, 1995 as both the earliest and latest date of discrimination. Thus, plaintiff's charge relating to her firing was timely. Because I find that plaintiff filed her charge within 300 days after she was terminated, I need not consider her continuing violation claim or her argument that the period should be tolled based on her illness or the government shut-down which occurred in November and December of 1995.

■ Defendant next argues that even if plaintiff filed her charge with the EEOC 278 days after the discriminatory conduct, it was not timely filed pursuant to § 2000e–5(c) because the fair employment practices agency in New York, the Division of Human Rights ("DHR"), did not affirmatively waive its 60–day deferral period. As noted, in *Commercial Office Prods.* the Supreme Court held that an agency's waiver of its exclusive 60–day deferral period, pursuant to a Workshare Agreement, terminates the state proceeding such that the EEOC may immediately proceed. 486 U.S. at 121, 108 S.Ct. at 1674. Defendant argues that the DHR did not waive its 60–day period, and therefore plaintiff's charge was in suspended animation for those 60 days and it should not be deemed to have been filed until the expiration of that period—which would be 338 days after the last discriminatory act and untimely. Defendant's argument fails for two reasons.

First, there is evidence here that the DHR actually waived its rights. Plaintiff has attached to her opposition papers a copy of a memorandum from the EEOC dated February 5, 1996. The memorandum to plaintiff's charge file from Maria Segarra, a supervisor in the Charge Receipt Technical Information Unit reads as follows: "I called the NYS Division of Human Rights this date to request a waiver of the 60 day deferral period. The waiver was granted as of this date." (Harger Aff., Ex. E) Indeed, defendant was aware that the DHR had waived the 60–day deferral period because on or about June 4, 1996 it received a letter from the DHR, in response to a request pursuant to the Freedom of Information Law, which stated that "the case was a waiver." (Schenkel–Savitt Aff., Ex. D, Tab 1)

Second, the DHR automatically waived its 60–day deferral period in this case pursuant to a Workshare Agreement with the EEOC. The Second Circuit has recently held that a Workshare Agreement in effect between the DHR and the EEOC contained an automatic and self-executing waiver of the DHR's exclusive 60 day period permitting the EEOC to proceed immediately to process a charge of discrimination. *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 310–11 (2d Cir.1996).

In *Ford*, the plaintiff filed his charge with the DHR 281 days after the alleged discrimination. *Id.* at 305. The DHR forwarded the charge to the EEOC and then commenced a four-month investigation, concluding that there was no probable cause of discrimination. *Id.* Thereafter, the plaintiff asked the EEOC to review his charge, and four months later received a notice of right to sue. *Id.* The plaintiff then sued in the Southern District of New York, and the defendant moved to dismiss, arguing that the plaintiff's EEOC charge was time barred because the DHR did not waive its 60–day period. The plaintiff argued that the Workshare Agreement between the DHR and the EEOC waived the state's right to an exclusive 60 day period, and constituted an immediate termination of the state proceeding. The Workshare Agreement at issue in *Ford*, covering 1995, stated:

> For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [DHR] waives its rights of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

*Id.* at 310 (bracketed material in original). Because the plaintiff's charge was one of those "to be initially processed by the EEOC," the Court held that the state had waived its rights, and the plaintiff's charge was timely filed with the EEOC. *Id.*

Here, the waiver clause in the Workshare Agreement in effect between the DHR and the EEOC at the time plaintiff filed her charge is the same as the one at issue in *Ford*. (Harger Aff., Ex. C) Defendant tries to escape the result mandated by *Ford* and

attempts to distinguish *Ford* by arguing that because the plaintiff there filed first with the DHR, "the *State Division* made the *decision* to transfer the charge to the EEOC for processing and, thus, affirmatively *waived* its 60–day deferral period." (Def.Reply Mem. at 15) (alteration in original)

That distinction is inconsistent with the Second Circuit's reasoning in *Ford.* The Second Circuit did not base its decision on the DHR's transfer of the charge to the EEOC. Rather, the Court expressly stated that "the DHR's *signing* of the Agreement effected a waiver of its otherwise exclusive statutory right to handle Ford's case" and "[t]he unqualified language of the 1995 Agreement makes this waiver self-executing ... the DHR's waiver ... went into effect *as soon as Ford filed his Title VII charge on the 281st day.*" *Id.* at 310 (emphasis added). The Court concluded:

> When state agencies unambiguously waive their statutory right to exclusively process certain discrimination claims they (and the EEOC) have made an arrangement for the benefit of claimants ... the timeliness of a claimant's filing therefore should not be made to depend on whether one or the other agency follows through on its undertakings under a Worksharing Agreement.

*Id.* at 312; *see also Mayo v. Securities Ind. Ass'n.,* No. 95 Civ. 4350, 1995 WL 608291 (S.D.N.Y. Oct. 17, 1995) (holding that the Workshare Agreement between DHR and EEOC was self-executing and stating that "nothing in Title VII, the federal regulations, or the worksharing agreement between the EEOC and the [DHR] requires the state to confirm its waiver as each new case arises.") (citations omitted).[1]

Here, plaintiff filed her case with the EEOC. Pursuant to the Workshare Agreement, which designates the DHR and the EEOC as agents for one another for the purpose of receiving and drafting charges, the charge was deemed filed with the DHR on the same date. Plaintiff's charge, because it was "originally received by the EEOC," falls with the category of charges over which the DHR "waives its right of exclusive jurisdiction." (Harger Aff. Ex. C) The DHR's waiver went into effect as soon as plaintiff filed her charge, and the EEOC could immediately proceed. Plaintiff's charge with the EEOC was thus timely filed pursuant to both § 2000e–5(c) and § 2000e–5(e)(1).

**B.** *Early Notice of Right to Sue*

■ Alternatively, BET argues that the EEOC's notice of right to sue was a nullity and this case should be remanded to the EEOC to complete its administrative review because the EEOC is "statutorily precluded from issuing a right to sue letter to a claimant until the expiration of 180 days after the claimant has initially filed charges with the EEOC." (Def.Mem. at 13) Here, the EEOC issued plaintiff a notice of right to sue on February 15, 1995, 15 days after plaintiff filed her charge.

The relevant section, 42 U.S.C. § 2000e–5(f)(1), states in relevant part:

> If a charge filed with the Commission pursuant to subsection (b) of this section ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the

1. Defendant's reliance on *Stephney v. Hospital for Joint Diseases,* 48 FEP Cases 775, 1985 WL 4271 (S.D.N.Y.1985) is downright bizarre. In *Stephney* the claimant had filed with the EEOC 270 days after the alleged discriminatory practice. In a footnote, the Court noted the existence of a Workshare Agreement which provided that the DHR "will waive its 60–day exclusive processing period whenever a charge is filed more than 240 days after the discriminatory act." *Id.* at 777 n. 5. The Court noted that "[i]t has been argued that this waiver violates both the letter and intent of the deferral procedures set forth on [sic] Title VII" *id.* (citations omitted), and then stated that because "plaintiff has proffered no evidence that she either requested the City Commission not to proceed and to waive its deferral or that the EEOC made such a request" it must conclude that any "worksharing agreement .. did not operate to summarily terminate any state proceedings." *Id.* However, *Stephney* was decided both before the Supreme Court's decision in *Commercial Office Prods.* which holds that a workshare agreement waiver terminates a state proceeding under Title VII, and before *Ford,* which expressly holds that a workshare agreement may "contain a self-executing waiver." *Ford,* 81 F.3d at 310.

Commission ... shall so notify the person aggrieved and within ninety days of giving such notice a civil action may be brought against the respondent named in the charge....

The 180–day period for administrative processing was enacted to encourage conciliation and apparently stems from the Congressional belief that "[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases." H.R. No. 92–238, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 2146. However, Congress recognized also that "regulatory agencies have been submerged with increasing workloads which strain their resources to the breaking point" and that it would, therefore, "be appropriate for the individual to institute a court action where the delay is occasioned by administrative inefficiencies." *Id.* at 2147, 2148. When Congress specified that the EEOC is required to authorize a private action after 180 days, its "primary concern [was] protection of the aggrieved person's option to seek a prompt remedy in the best manner available." *Id.* at 2148.

In Title VII, Congress not only charged the EEOC with enforcement of the Act, but also authorized the EEOC to "issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e–12(a) (1994). Pursuant to this authority, the EEOC enacted the regulation under which it grants early notices of right to sue:

> When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued ... the Commission may issue such notice ... at any time prior to the expiration of 180 days from the date of filing of the charge with the Commission; provided that the District Director [or other stated Directors] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.28(a)(2) (1995). Plaintiff's notice was validly granted pursuant to § 1601.28; it was signed by the District Di-

rector and states that he does not think it probable the Commission will complete its processing before 180 days. BET argues, however, that the EEOC exceeded its authority in enacting this regulation because the 180–day period under the Act is mandatory. Accordingly, BET argues, plaintiff's claim is not properly before this court and must be remanded to the EEOC.

The statute does not support defendant's argument. The 180–day period in § 2000e–5(f) is not mandatory, and § 1601.28(a)(2) is a reasonable regulation, not in conflict with the language or the purpose of Title VII, enacted pursuant to authority granted by Congress.

First, the regulation, and the issuance of early notices, is not precluded by the language or purpose of Title VII. Section 2000e–5(f)(1) states that if one of two events occurs—dismissal of a charge or the passage of 180 days without the filing of a civil action or a conciliation agreement—then the EEOC must, upon request, issue a notice of right to sue. Title VII, on its face, does not prohibit the EEOC from issuing a notice of right to sue before the 180–day period has expired. *See Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1062 (11th Cir.1994). Also, the legislative history shows that Congress was most concerned with insuring the prompt resolution of discrimination claims, and the 180–day limit was meant to be an outer limit to prevent claims from stagnating at the EEOC and to protect claimants from administrative delay. As the *Sims* Court stated:

> The 180–day period was intended to afford victims of employment discrimination a private cause of action where the EEOC does not act, or does not act in a timely fashion. The EEOC's regulation simply recognizes that the caseload will sometimes be so heavy that it can be determined early on that no action can be taken within 180 days and the issuance of an early right-to-sue letter is a reasonable implementation of the Act.

*Id.* at 1062 (quoting *Rolark v. University of Chicago Hosps.,* 688 F.Supp. 401, 404 (N.D.Ill.1988)). Thus, the 180–day period set forth in § 2000e–5(f)(1) is a statutory cut-off, after which the EEOC may no longer retain exclusive jurisdiction. The EEOC is not

barred from waiving its exclusive jurisdiction before expiration of the 180 days, if it believes that doing so will benefit claimants and facilitate the purposes of Title VII.

■ Second, a regulation enacted pursuant to the EEOC's authority under § 2000e–12(a) must be upheld so long as it is "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). When deciding whether an agency's interpretation of a statute is entitled to deference, a court must first determine whether Congress spoke directly on the issue. *Id.* at 842–43, 104 S.Ct. at 2781–82. I have already determined that nothing in Title VII or its legislative history precludes the issuance of early notices of right to sue. Accordingly, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" *id.* at 844, 104 S.Ct. at 2782, and "the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility . . . need only be reasonable to be entitled to deference." *Commercial Office Prods.,* 486 U.S. at 115, 108 S.Ct. at 1671. Even if I disagreed with the EEOC, I could not substitute my own construction of the statutory provision for the EEOC's reasonable interpretation. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. Thus, the 180–day period is not mandatory and plaintiff's claim is properly before this court.

Defendant relies on four district court opinions in this Circuit which have held that the issuance of early notices of right to sue presents a jurisdictional deficiency mandating remand to the EEOC. Each of these cases relies on the text of § 2000e–5(f) and the legislative history. *See Henschke v. New York Hospital–Cornell Medical Center,* 821 F.Supp. 166, 170 (S.D.N.Y.1993) (holding that Title VII claims can only be filed after either a dismissal of the charge by the EEOC or the lapsing of 180 days without EEOC action); *Wilk v. Intercontinental Hotel of New York,* No. 92 Civ. 2068, 1993 WL 88230 (S.D.N.Y. March 24, 1993); *True v. New York State Dept. of Correctional Serv.,* 613 F.Supp. 27, 29–30 (W.D.N.Y.1984) ("I find

that the language of section 2000e–5(f)(1) is clear in requiring either the dismissal of the charges or the passage of the stated time period as a condition precedent to the filing of a Title VII cause of action in a federal district court."); *Spencer v. Banco Real, S.A.,* 87 F.R.D. 739, 743 (S.D.N.Y.1980) ("The statutory scheme of Title VII . . . suggests that exhaustion of the 180–day period was intended to be a jurisdictional prerequisite.").

Defendant also relies heavily on *Pearce v. Barry Sable Diamonds,* 912 F.Supp. 149 (E.D.Pa.1996), in which the District Court certified to the Court of Appeals for the Third Circuit for interlocutory appeal the question of whether the regulation permitting early notices of right to sue, § 1601.28(a)(2), is valid. *Id.* at 158. The *Pearce* Court stated that if it was writing on a blank slate, it would "find that the EEOC exceeded its authority when it issued section 1601.28(a)(2) and that the EEOC has no power to authorize a plaintiff to file an employment discrimination claim before the 180 days of 42 U.S.C. § 2000e–5(f)(1) expires [sic]." *Id.* at 151.

With the greatest of respect to my colleagues, I do not believe that the text of § 2000e–5(f)(1) supports their conclusions. In simple terms, § 2000e–5(f)(1) states that *if* X occurs, or *if* Y occurs, then the Commission *shall* issue a notice of right to sue. However, the word "if" together with "shall" does not bar the conclusion that even when neither of the two conditions occurs, the Commission still *may* issue a notice of right to sue. This the Commission has provided for by regulation.

The weaknesses of legislative history as a basis for divining Congressional intent have been amply documented, and I am mindful of them. *See e.g., Blanchard v. Bergeron,* 489 U.S. 87, 99, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989) (Scalia, J. concurring) ("It is neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes of the United States, nor conducive to a genuine effectuation of congressional intent, to give legislative force to each snippet of analysis . . . in committee reports that are increasingly unreliable evidence of what the voting

Members of Congress actually had in mind."). Congress enacts statutes, not committee reports and debates. However, to the extent my colleagues rely on legislative history, I respectfully disagree also with their reading of the relevant history. Congress did not explicitly address this issue, and the implications of the legislative history cut both ways. Although Congress clearly wanted to promote the EEOC as the preferred tribunal for the resolution of employment discrimination claims, as evidenced by the requirement that a litigant first file a charge of employment discrimination with the EEOC, it also wanted to insure a speedy resolution of cases and wanted to protect a claimant's right to proceed in federal court if the claim got bogged down at the EEOC, as evidenced by the 180–day limit on the EEOC's exclusive jurisdiction. The EEOC's ability to issue early notices advances both policies. If the EEOC determines that a case probably *will* get bogged down in the administrative process, such that the EEOC will not resolve the claim, nothing in the Act or legislative history precludes it from so notifying the claimant and authorizing a private action in federal court before the expiration of 180 days.

In addition, none of the other reasons proffered by the courts that have invalidated the regulation outweighs the deference which must be accorded the EEOC's interpretation of the statute. The *Pearce* court recited four points which "remain good policy and continue to make good sense." 912 F.Supp. at 154. Defendant cites the same points in its memorandum of law. They are: 1) other than being somewhat delayed, an employee who must wait the 180 days is in no worse position than one who receives an early notice of right to sue; 2) early notices will result in a decrease in the EEOC's efficiency; 3) the regulation grants unreviewable discretionary power to the EEOC; and 4) the regulation grants the EEOC the power to expand federal jurisdiction. The first "reason"—that a claimant who is delayed is only delayed—assumes what it purports to demonstrate, *i.e.,* that there is no harm in delay. The next two are policy arguments. Even if I agreed with them, it is the EEOC, and not the judiciary, which has the authority and power to enact regulations to implement and enforce the policies underlying Title VII. As the Supreme Court has cautioned, once a court determines that Congress did not state its intent in a statute, the question before it is whether the agency's interpretation of that statute is a reasonable one, not whether the agency's interpretation is the correct or the best one. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Policy arguments such as these "are more properly addressed to legislators or administrators, not to judges." *Id.* at 864, 104 S.Ct. at 2792.

The jurisdictional argument also fails because § 2000e–5(f)(1) is not jurisdictional. The *Pearce* court itself states that § 2000e–5(f)(1) is not jurisdictional. 912 F.Supp. at 154 (stating the *Spencer* was based on the "outdated reasoning that the 180–day period of 42 U.S.C. § 2000e–5(f)(1) is jurisdictional."). The *Pearce* court cites *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), for the proposition that the 180–day period of exclusive EEOC jurisdiction is not "jurisdictional, but, rather, is subject to the equitable considerations of estoppel, waiver, and laches." *Id.* at 153. However, *Zipes* actually holds that the 180–day period within which the complainant must file a charge with *the EEOC* is not jurisdictional. 455 U.S. at 398, 102 S.Ct. at 1135. But, in so holding, the *Zipes* Court noted that the jurisdiction of federal courts over Title VII claims, arising from 42 U.S.C. § 2000e–5(f)(3), is not limited to cases timely filed with the EEOC. *Id.* at 393, 102 S.Ct. at 1132. Which is to say, the filing deadlines are in the nature of statutes of limitation, which can be extended, not jurisdictional limits, which cannot. *Id.* Likewise, that subsection does not limit federal jurisdiction solely to cases dismissed from or which have been pending before the EEOC for 180 days. 42 U.S.C. § 2000e–5(f)(3). The logic of *Zipes* leads to a conclusion that expiration of the EEOC's period of exclusive jurisdiction is not a prerequisite to federal jurisdiction, but is rather in the nature of a condition which may be waived by the EEOC.

Further, the Supreme Court's decision in *Commercial Office Prods.* also supports the

conclusion that § 2000e–5(f)(1) is not jurisdictional. As noted, in *Commercial Office Prods.* the Court held that a state agency may waive its 60–day period of exclusive jurisdiction. Although the Court was construing the term "terminated" and held that a waiver was a termination of a state proceeding, the Court noted that the purpose of the 60–day exclusive jurisdiction period was to provide states with an opportunity for a period of exclusivity; that "[t]he waiver of that opportunity in specified instances is a voluntary choice"; and that "nothing in the waiver provisions ... impinges on the opportunity of the States to have an exclusive 60–day period for processing a discrimination charge." 486 U.S. at 117, 108 S.Ct. at 1672. Further, the Court noted that the 60–day deferral period was "meant to 'promote time, economy and the expeditious handling of cases'" *id.* at 118, 108 S.Ct. at 1673 (citing 110 Cong.Rec. 9790 (1964) (remarks of Sen. Dirksen)), and concluded that forcing the state to retain claims for the full 60 days and requiring the EEOC to wait before processing a claim "when the EEOC and the state agency agree that the State or locality will take no action during that period" would "result in extraordinary inefficiency without furthering any other goal of the Act." *Id.* at 119, 108 S.Ct. at 1673.

The same logic applies here. The purpose of the 180–day period in § 2000e–5(f)(1) is to provide the EEOC with a period of exclusive jurisdiction. That period is intended to promote efficiency because Congress considered administrative tribunals presumptively better than courts at resolving employment discrimination claims. However, forcing the EEOC to retain exclusive jurisdiction when it determines that it likely will not act results in the same "extraordinary inefficiency" decried and avoided by the Court in *Commercial Office Prods.*

Two Circuit Courts of Appeals have addressed directly the issuance of early notices of right to sue and have upheld them. *See Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1060 (11th Cir.1994) (holding that "early issuance of a notice of right to sue based on the Commission's certification [pursuant to 29 C.F.R. § 1601.28(a)(2)] that it will be unable

to process the charge within 180 days does not preclude a claimant from filing an action in federal court...."); *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 424 (9th Cir. 1978), ("Nowhere does [§ 2000e–5(f)(1)] prohibit the EEOC from issuing [a notice of right to sue] before the expiration of the 180 day period."), vacated on other grounds, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980). Indeed, the fact that the Supreme Court reached the merits of *Bryant* on appeal without discussing the early notice of right to sue issued by the EEOC in that case, lends at least some credence to the claim that the Supreme Court would not consider the 180–day period to be jurisdictional or mandatory. Also, several district courts recently have upheld the issuance of early notices of right to sue. *See Parker v. Noble Roman's, Inc.*, No. IP–96–65–C–D/F, 1996 WL 453572 (S.D.Ind. June 26, 1996) ("We find the reasoning in Trus Joist MacMillan, Rolark and those cases upholding the validity of the regulation to be most persuasive."); *Martinez v. Labelmaster*, No. 96 C 4189, 1996 WL 580893 (N.D.Ill.1996) ("We conclude that 29 C.F.R. § 1601.28(a)(2) is a reasonable interpretation of section 2000e–5(f)(1) of Title VII to which we must give deference."); *Rolark v. University of Chicago Hosps.*, 688 F.Supp. 401, 404 (N.D.Ill.1988) ("there is nothing in the Act which prohibits the EEOC from relinquishing its jurisdiction").

Finally, although the Second Circuit has not addressed directly the issue of the validity of § 1601.28(a)(2), it has permitted an early notice of right to sue. In *Weise v. Syracuse Univ.*, 522 F.2d 397, 412 (2d Cir. 1975), decided before the EEOC enacted the regulation permitting early notices of right to sue, the Court rejected the defendant's argument that an early notice failed to comply with Title VII. The Court was critical of early notices, but permitted the federal action to proceed even though the EEOC had issued a notice before the expiration of 180 days:

> While it is true that, absent the dismissal of a charge by the EEOC, the Notice should not issue until a charge has been before the Commission for at least 180 days, in this case there was a prior charge against the same employer that had been

pending for more than the required time, and it was clear that no conciliation was likely.... To require the EEOC to hold the second charge for 180 days would not have advanced the conciliation purposes of the Act and would only have served to delay the proceedings....

*Id. Weise* stands for the proposition that the 180 days is not jurisdictional or mandatory, and can be waived when the EEOC is not likely to effect conciliation as contemplated by Title VII.

Accordingly, based on the text of Title VII and the necessity of affording the EEOC deference in its reasonable interpretations of Title VII, I find that 29 C.F.R. § 1601.28(a)(2) is a valid and reasonable regulation. The issuance of an early notice of right to sue is not prohibited by Title VII and does not prevent this court from exercising jurisdiction over this case.

### III.

■ Defendant moves also to dismiss plaintiff's claim under the FMLA. The FMLA grants an "eligible employee" the right to a total of 12 unpaid workweeks of leave during any 12–month period, among other reasons, to care for a newborn or newly adopted child. 29 U.S.C. § 2612 (Supp. 1996). The FMLA also makes it unlawful for any employer to "interfere with, restrain, or deny the exercise or attempt to exercise any right provided under this subchapter," § 2615(a)(1), and provides an employee a private right of action against any employer "who violates section 2615." 29 U.S.C. § 2617(a)(1), (2) (Supp.1996).

An "eligible employee" is defined as an employee who has been employed, "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12–month period." 29 C.F.R. § 2611(2)(A). The Act expressly excludes "any employee of an employer who is employed at a worksite at which such em-

ployer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B). In plain English, an "eligible employee" is one who has been employed for at least 12 months, and has worked for at least 1,250 hours in the last 12 months, and who works for an employer with more than 50 total employees within a 75–mile radius.

A court may dismiss an action under Fed. R.Civ.P. 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering the motion the court must "take all well pleaded factual allegations as true," and draw all reasonable inferences in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

In her complaint, plaintiff alleges that BET employs more than 50 employees within 75 miles, and in an affidavit, plaintiff claims these employees include a number of "correspondents" and "fashion production" employees at an office located at 90 Park Avenue, New York, New York. BET argues that in April 1995 it (both Black Entertainment Television and Paige Publications) employed only 30 employees within 75 miles of plaintiff's New York City office, and that the correspondents and production people plaintiff mentions were not "employees" as defined by the FMLA,[2] but were "independent contractors." (Moy Aff. ¶¶ 2–3; Schenkel–Savitt Aff., Ex. F ¶¶ 3, 4)

Whether the persons working for BET at 90 Park Avenue were employees or not is a question of fact which cannot be decided on motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The only question on a Rule 12(b)(6) motion is whether, taking all of plaintiff's allegations to be true, plaintiff has stated a claim upon which relief can be granted. If the persons working at 90 Park Avenue were employees, then plaintiff has

---

**2.** The FMLA relies on the definition of employee in the Fair Labor Standards Act. 29 U.S.C. § 2611(3) ("The terms 'employ', 'employee', and 'state have the same meanings given such terms in subsections (c), (e), and (g) of section 203 of

this title."). Section 203(e) defines "employee" as "any individual employed by an employer" and § 203(g) states that "'employ' includes to suffer or permit to work." 29 U.S.C. § 203(e), (g) (1994).

stated a valid claim for relief under the FMLA. I could, pursuant to Fed.R. 12(b), convert this motion into a motion for summary judgment pursuant to Rule 56. However, because I am denying defendant's motion to dismiss plaintiff's Title VII claim as well, and the case will stay before this court, the issue of whether plaintiff is an eligible employee under the FMLA should be decided on a complete record, after both plaintiff and defendant have had an opportunity to conduct discovery.

Defendant's motion to dismiss plaintiff's claim for punitive damages must also be denied. Punitive damages are available for violations of Title VII. 42 U.S.C. § 1981a(a) (1994). Whether punitive damages are available also under the New York City Human Rights Law or are preempted by state law need not be decided for purposes of this motion. Finally, because defendant's motion to dismiss plaintiff's Title VII and FMLA claims is denied, this court has jurisdiction over plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367(a), and there is no valid reason to dismiss under § 1367(b).

\*       \*       \*

For the reasons stated above, defendant's motion to dismiss is denied. Defendant's motion for costs and attorney's fees accordingly is also denied.

SO ORDERED.