**Maureen SEYBERT and Geraldine Bellam**

v.

**WEST CHESTER UNIVERSITY and Samuel Moore, Ph.D.**

No. Civ.A. 99–3860.

United States District Court, E.D. Pennsylvania.

Feb. 11, 2000.

Dolores M. Troiani, Paoli, PA, for Plaintiffs.

Claudia M. Tesoro, Office of Attorney General, Phila, PA, for Defendants.

### MEMORANDUM

LUDWIG, District Judge.

Defendants West Chester University and Samuel Moore, Ph.D., moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim. Fed.R.Civ.P. 12(b)(1) & (6). An

order was entered granting in part and denying in part the motion. Order, October 28, 1999. Jurisdiction is federal question. 28 U.S.C. § 1332.

This is an employment discrimination action arising under Title VII, 42 U.S.C. § 2000e–2(a); 42 U.S.C. § 1983; and, as a supplemental claim, under the Pennsylvania Constitution. The complaint alleges that plaintiffs Maureen Seybert and Geraldine Bellam were the subject of gender discrimination and retaliation. The facts are viewed from the pleader's standpoint, as required for this ruling.[1]

To summarize the dismissal motion, it asserts that the complaint is deficient because: (1) Title VII's jurisdictional prerequisites are not met; (2) defendants West Chester University and Moore, in his official capacity, are immune from suit under the Eleventh Amendment and also are not "persons" under § 1983; and (3) the Eleventh Amendment and the doctrine of sovereign immunity bar the state constitutional claim.

### I. Title VII

On March 26, 1999 each plaintiff filed an administrative charge of discrimination with the EEOC. On March 26, 1999—55 days later—each received a right to sue notice. Compl. at ¶¶ 8—13. The question is whether the notices were valid given their issuance before the expiration of the 180–day period set forth in the statute.

Under Title VII, a notice of a right to sue is a prerequisite to filing an action. Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), directs the EEOC to issue a right to sue notice if: (1) it dismisses the charge, or (2) 180 days have elapsed and the EEOC has not entered into a conciliation agreement or filed a civil action.[2] *Id.*

---

1. Under Rule 12(b)(6), the allegations of the complaint are accepted as true, and all reasonable inferences are drawn in the light most favorable to the plaintiff, and dismissal is appropriate only if it appears that plaintiff would prove no set of facts that would entitle

her to relief. *See United States v. Occidental Chem. Corp.,* 200 F.3d 143, 145 (3d Cir.1999).

2. Section 706(f)(1) in part:
 If a charge filed with the [EEOC] ... is dismissed by the [EEOC], or if within one hundred and eighty days from the filing of

Once the notice is given, the employee has 90 days to institute suit.[3] *Id.* However, in 1977, the EEOC promulgated a regulation that permits a right to sue notice to be issued before the expiration of 180 days if the Commission certifies that it will probably be unable to process the case within that length of time. 29 C.F.R. § 1601.28(a)(2). At issue here is whether the regulation unlawfully defeats the statutory time allocation and, if so, deprives this court of jurisdiction.

The early history of the right to sue regulation is instructive. In 1977, prior to the release of the regulation, the Court described the 180–day waiting period as "mandatory." *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 2452, 53 L.Ed.2d 402 (1977).[4] Later that year, in reaction to the decision and no doubt swamped with cases, the EEOC published[5] 29 C.F.R. § 1601.28(a)(2).[6] As observed by Judge Dalzell, of our court, the rationale behind § 1601.28(a)(2) is " 'the legal principle that a party is not required to perform a useless act, *i.e.,* wait

for the passage of 180 days when the passage of such time will not accomplish any purpose.' " *Pearce v. Barry Sable Diamonds,* 912 F.Supp. 149, 154 (E.D.Pa. 1996) (*citing* to 42 Fed.Reg. 47, 828, 47, 831 (1977)).

The regulation's validity has been "hotly debated," *Lemke v. Int'l Total Servs., Inc.,* 56 F.Supp.2d 472, 478 (D.N.J.1999), and as of last year, a circuit split arose by virtue of a case decided by the Court of Appeals for the District of Columbia; *Martini v. Fed. Nat'l Mortgage Assoc.,* 178 F.3d 1336 (D.C.Cir.1999), *petition for cert. filed,* 68 USLW 3368 (U.S. November 29, 1999) (No. 99–908). In *Martini,* the regulation was invalidated as contrary to Title VII's waiting period provision. The hypothesis is that Congress intended to have every charge of discrimination administratively investigated and wanted to encourage informal conciliation in preference to litigation. A number of district courts in New York and one in New Mexico had reached the same conclusion.[7] However, the

such charge or the expiration of any period of reference ... (from a state agency), whichever is later, the [EEOC] has not filed a civil action under this section ..., or the [EEOC] has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify *the person aggrieved and within ninety* days after the giving of such notice a civil action may be brought against the respondent named in the charge.
42 U.S.C. § 2000e–5(f)(1).

**3.** Here, plaintiff's action was filed on July 30, 1999, within the 90–day filing period.

**4.** The Court later noted that the 180–day waiting period is not jurisdictional and is subject to equitable considerations, *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). *See Pearce v. Barry Sable Diamonds,* 912 F.Supp. 149, 153 (E.D.Pa.1996)(*Zipes* "confirm[ed] th[e] language's status as dicta").

**5.** 42 U.S.C. § 2000e–12(a) empowers the Commission "to issue, amend, or rescind suitable procedural regulations to carry out the provision of [the act]."

**6.** The regulation reads in full:

When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against respondent other than a government, governmental agency or political subdivision, the Commission may issue such notice ... at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that the District Director, the Area Director, the Local Director, the Program Director, Office of Program Operations or upon delegation, the Director of Systematic Programs, Office of Program Operations or the Directors, Field Management Programs, Office of Program Operations has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.
29 C.F.R. § 1601.28(a)(2).

**7.** *See Rodriguez v. Connection Tech. Inc.,* 65 F.Supp.2d 107, 111 (E.D.N.Y.1999); *Stetz v. Reeher Enters., Inc.,* 70 F.Supp.2d 119, 123 (N.D.N.Y.1999); *Olszewski v. Bloomberg L.P.,* Civ. No. 96–3393, 1997 WL 375690 at *4 (S.D.N.Y. July 7, 1997); *Montoya v. Valencia*

Courts of Appeal for the Ninth and Eleventh Circuits, together with district courts in the Northern District of Illinois, the Southern District of Texas, the Eastern District of Arkansas, and the Southern District of New York, have found the regulation reasonable and have deferred to the EEOC's interpretation of its role under Title VII.[8]

Our Court of Appeals has not taken a definitive position. After characterizing the early right to sue notice as a "deliberate bypass of administrative remedies," it declined to rule on the validity of 29 C.F.R. § 1601.28(a)(2).

> Even so, premature resort to the district court should be discouraged as contrary to congressional intent. The preference for conciliation as the dispute resolution method in employment discrimination proceedings should not be undermined by a party's deliberate bypass of admin-istrative remedies. Accordingly, the plaintiff's actions in foreclosing EEOC conciliation efforts is one factor to be considered in determining whether equitable relief should be granted.

*Moteles v. Univ. of Pa.*, 730 F.2d 913, 917 (3d Cir.1984). Also in 1984, before *Moteles*, another case intimated that a failure to exhaust the 180 days was not an absolute bar to suit. *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). There, without waiting, an employee was permitted to sue for a second act of discrimination where the discriminatory conduct was related to that in the ongoing suit.

 District courts within our Circuit and within our district disagree over the regulation's validity.[9] In the present case, the regulation was upheld using the guidance of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron*, in

---

*County*, 872 F.Supp. 904, 905–06 (D.N.M. 1994); *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F.Supp. 166, 169–71 (S.D.N.Y. 1993); *Wilk v. Intercontinental Hotel of New York*, Civ. No. 92–2068, 1993 WL 88230 at *5 (S.D.N.Y. March 24, 1993); *State of N.Y. by Abrams v. Holiday Inns, Inc.*, 656 F.Supp. 675, 678–80 (W.D.N.Y.1984).

8. *See Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061–62 (11th Cir.1994); *Brown v. Puget Sound Elec.*, 732 F.2d 726, 729 (9th Cir. 1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); *Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1251, 1257 (9th Cir.1980); *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 425 (9th Cir.1978), *vacated and remanded on other grounds*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Berry v. Delta Air Lines, Inc.*, 75 F.Supp.2d 890, 1999 WL 1115760 at *2 (N.D.Ill.Dec. 1, 1999); *Connor v. WTI*, Civ. No. 99–224, 1999 WL 803754 at *5 (S.D.Tex. Oct. 1, 1999); *Palumbo v. Lufthansa German Airlines*, Civ. No. 98–5005, 1999 WL 540446 at *1–2 (S.D.N.Y. July 26, 1999); *Rosario v. Copacabana Night Club, Inc.*, Civ. No. 97–2052, 1998 WL 273110 at *7 (S.D.N.Y. May 28, 1998); *Figueira v. Black Entertainment Television, Inc.*, 944 F.Supp. 299, 304 (S.D.N.Y.1996); *Martinez v. Labelmaster*, Civ. No. 96–4189, 1996 WL 580893 (N.D.Ill. Oct.4, 1996); *Chandler v. Fast Lane, Inc.*, 868 F.Supp. 1138, 1141 (E.D.Ark.1994); *Rolark v. Univ. of Chicago Hosps.*, 688 F.Supp. 401, 404

(N.D.Ill.1988). The Southern District of New York is itself divided on the issue, as is our court and the districts within our circuit. *See infra* at n. 9.

9. *Compare Defranks v. Court of Common Pleas of Fayette County*, Civ. No. 95–327, 1995 WL 606800 at *6 (W.D.Pa. Aug. 17, 1995)(upholding regulation); *Anjelino v. New York Times Co.*, Civ. No. 92–2852, 1993 WL 170209 at *8 n. 8 (D.N.J. May 14, 1993)(finding no right to dismissal for failure to exhaust); *Hooks v. RCA Corp.*, 620 F.Supp. 1, 2 (E.D.Pa.1984) (upholding regulation); *Bey v. Schneider Sheet Metal, Inc.*, 596 F.Supp. 319, 323 (W.D.Pa. 1984) (upholding regulation) with *McLaughlin v. State Sys. of Higher Educ.*, Civ. No. 97–1144, 1999 WL 239408 at *2 (E.D.Pa. March 31, 1999) (dismissing complaint for failure to exhaust); *Lemke v. Int'l Total Servs.*, 56 F.Supp.2d 472, 477 (D.N.J.) (finding regulation invalid but allowing plaintiffs to proceed for equitable reasons); *Robinson v. Red Rose Communications, Inc.*, Civ. No. 97–6497, 1998 WL 221028 at *2 (E.D.Pa. May 4, 1998) (finding regulation invalid and requiring plaintiff to refile with EEOC); *Krause v. Security Search & Abstract Co.*, Civ. No. 96–5742, 1997 WL 528081 at *3 (E.D.Pa. Aug. 21, 1997) (suspending action until plaintiffs exhausted administrative remedies); *Pearce*, 912 F.Supp. at 151 (noting desire to find the regulation invalid and certifying the issue to the Court of Appeals, after which the case was settled).

reviewing an administrative agency's construction of a statute, there is a two-tiered analysis. 467 U.S. at 842, 104 S.Ct. 2778.

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–843, 104 S.Ct. 2778. Both the statutory language and the legislative history should be examined. "[T]he particular statutory language," as well as "the language and design of the statute as a whole" are to be considered. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). If the intent of Congress is unclear or is ambiguous, deference should be given to the agency's interpretation so long as it is reasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. 2778 ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

■ Here, the issue turns on whether § 2000e–5(f)(1) specifies the exclusive conditions for federal jurisdiction under Title VII. *See Martini v. Fed. Nat'l Mortgage Assoc.,* 178 F.3d 1336.

■ The statutory text is not particularly helpful.

"[I]f within [180] days from the filing of such charge ... the [EEOC] has not filed a civil action under this section ..., or the [EEOC] has not entered into a conciliation agreement to which the person aggrieved is a party, the [EEOC].. shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved...."

§ 2000e–5(f)(1). While there are two instances in which the EEOC is obligated to issue a right to sue notice—after 180 days have passed without conciliation or filing suit, or upon dismissal of the charge— these jurisdictional contours are not explicitly exclusive.[10] *See Lemke,* 56 F.Supp.2d at 480. The statute certainly seems to contemplate some EEOC action within 180 days, *see* § 2000e–5(b)(if practicable, reasonable cause to be determined within 120 days of filing), but it does not stake out as a condition precedent to a private lawsuit six months of agency inaction. *See Berry v. Delta Air Lines, Inc.,* 75 F.Supp.2d 890, 891 (N.D.Ill. 1999)(180–day period can just as easily be read to be a maximum waiting period, as it can a minimum.).

The legislative history is not less equivocal. Some of it depicts the EEOC as the preferred tribunal for resolving employment discrimination claims, observing that "[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases." H.R.Rep. No. 92–238, (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2146. With this in mind, it can be said that Congress enacted the 180–day waiting provision to force complainants "[to] sit ... around [for] 6 months," in the hope that administrative processing would lead to conciliation. 118 Cong. Rec. 1069 (1972).

10. Judicial thinking has differed on the meaning of the conditional "if." Does it preclude private suits unless one of the two conditions occurs—or, used in conjunction with "shall," does it suggest the contrary? *Compare Spenc-* er v. Banco Real S.A., 87 F.R.D. 739, 743 (S.D.N.Y.1980) *with Figueira v. Black Entertainment Television,* 944 F.Supp. 299, 305 (S.D.N.Y.1996).

Private lawsuits, Congress envisioned, would be "the exception and not the rule." 118 Cong. Rec. 7168.

Concomitantly, it was stated in the House that "[t]he primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available." H.R.Rep. No. 92–238, (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2148. The 180–day provision was "designed to make sure that the person aggrieved does not have to endure lengthy delays if the [EEOC] ... does not act with due diligence and speed." *Id.* It "allow[s] the person aggrieved to elect to pursue his or her own remedy under this title where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." *Id.*

Perhaps unsurprisingly, given the multiple objectives of the legislation, its history does not conclusively point to a single interpretation. "Did Congress simply intend to guarantee the right to sue after 180 days, or did it further intend to prohibit private suits within 180 days." *Martini*, 178 F.3d at 1345; *see Berry*, 75 F.Supp.2d at 891. While the EEOC must issue a right to sue letter after 180 days, Title VII did not deal with the problems of an agency ill-equipped to sweep back increasing waves of employment discrimination and disability claims. The EEOC has a huge bureaucratic workload in which only a certain portion of the filings can be processed within the allocated time period. The split in the Circuits and the variety of district court decisions reflect how statutory construction has produced differing views on the validity of the Commission's regulation.[11]

When legislation is not clear, *Chevron* dictates that one ask whether the agency's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. The question is not whether the EEOC's view is correct, or whether another view, such as *Martini'*s, is incorrect, but given the alternatives, whether the regulation is a plausible interpretation of § 2000e–5(1)(f). Under *Chevron*, that suffices, and once upheld the regulation is entitled to deference. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 n. 4 (3d Cir.1998) (EEOC regulations are accorded substantial deference).

The regulation's validity, however, should not presuppose its unfettered applicability. A policy objective of Title VII was to promote informal resolution of employment discrimination disputes. Early right to sue notices should not be issued as of course. A cooling off period can have value, and with the proliferation and simplification of ADR procedures and worksharing with state agencies, every case should at least be screened for the possi-

---

11. For example, *Martini* found § 2000e–5(b)—which imposes on the EEOC a duty to investigate all charges—to be inconsistent with the regulation, and, as a consequence, invalidated it. 178 F.3d at 1347. Section 2000e–5(b) requires the EEOC to determine "reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge...." The EEOC's "duty to investigate is both mandatory and unqualified," and the issuance of a right to sue notice "typically terminates [the] EEOC investigation of the charge." *Id.* So viewed, *Martini* reasoned that the regulation could not be squared with "section 2000e–5(b)'s express direction to the Commission that it investigate all charges." 178 F.3d at 1346.

However, *Martini*, while plausible, does not resolve the ambiguity of § 2000e–5(b); and

other plausible constructions exist. The EEOC must determine reasonable cause, but the time period is not rigidly fixed. *See Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301, 1307 (8th Cir.1975)(understanding "that determinations on reasonable cause alone might take more than 120 days," Congress set flexible deadlines); *see also Equal Employment Opportunity Commission v. E.I. duPont de Nemours & Co.*, 516 F.2d 1297, 1301 (3d Cir.1975).

The regulation is consistent with the statutory mandate to investigate. *See Berry*, 75 F.Supp.2d at 892 ("[t]he regulation does not allow the wholesale abandonment of the EEOC's mandate; instead, it requires the agency's expert determination that a right-to-sue letter is probable."). The regulation, when the 180–day time-frame is not within reason, merely speeds up the inevitable.

bility of early conciliation. Bringing the parties together should have a salutary effect at least in some instances. The EEOC should not be regarded as a minor detour on the way to court, and it is up to the Commission to assure that misconception is not given credence.[12] If it appeared of record that a charge has received little, if any, consideration other than the issuance of an early right to sue notice, a court should be able to remand the case for further administrative processing.

## II. Section 1983

█ The Eleventh Amendment bars "suits against departments or agencies of the state having no existence apart from the state," *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196, as well as suits for monetary damages against state officials acting in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

█ A state university system, as a government instrumentality, 24 P.S. § 20–2002–A(a), is "entitled to the protection of the Eleventh Amendment." *Skehan v. State System of Higher Education,* 815 F.2d 244, 249 (3d Cir.1987). As a member institution, 24 P.S. § 20–2002–A(a)(14), West Chester University is entitled to such immunity. *See Lach v. Robb,* 679 F.Supp. 508, 513 (W.D.Pa.)(California University of Pennsylvania), *aff'd,* 857 F.2d 1464 (3d Cir.1988); *see also Lewis v. Kelchner,* 658 F.Supp. 358, 360

(M.D.Pa.1986)(Mansfield University); *Wynne v. Shippensburg Univ.,* 639 F.Supp. 76, 82 (M.D.Pa.1985). By giving consent, a state may waive its Eleventh Amendment immunity. However, via statute, 42 P.S. § 8521(b), Pennsylvania has explicitly withheld consent. *See Laskaris,* 661 F.2d at 25.

█ Accordingly, the motion to dismiss was granted, plaintiffs were given leave to amend their complaint to state a claim against Dr. Moore in his individual capacity, and on November 10, 1999, and an amended complaint was filed.[13]

## III. Pennsylvania Constitution

Count III of the complaint pleads a supplemental claim under the Pennsylvania Constitution, and a 1990 decision of our Court of Appeals holds open that there may be such a possibility. *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779, 789 (3d Cir.1990); *but see, Crighton v. Schuylkill County,* 882 F. Supp. 411, 416 (E.D.P.A.1995), and *Agresta v. Goode,* 797 F.Supp. 399, 409 (E.D.Pa.1992). It would appear extremely unlikely that plaintiff could prevail on this state claim. In addition to the lack of a statutory vehicle, defendant would appear to be immunized under the PA Political Subdivision Torts Claims Act, 42 Pa. Cons.Stat. Ann. §§ 8541–64. *See Crighton,* 882 F.Supp. at 416; *Agresta,* 797 F.Supp. at 409–410.

---

**12.** If anything, the EEOC's statistics and publicized objectives belie the misconception. *See* the EEOC's *Accomplishment Report for Fiscal Year 1999* and News Release, Dec 27, 1999. At the end of 1999, the EEOC's average time for processing a charge was 265 days—down from 379 days in September 1996; the national inventory was 40,234 cases—down from a high of 111,345 in September 1995. The day may come when the regulation will be used only in exceptional cases.

It is the position of the EEOC that right to sue notices are issued only after careful consideration. Factors reviewed include: the

agency's need to conduct extensive witness interviews; the respondent's history of cooperation; the time between the filing of the charge and the request; the pending caseload. Also, the policy of the Philadelphia office of the EEOC is to afford a settlement opportunity before an early notice is issued.

**13.** Count II was dismissed on Eleventh Amendment grounds. In addition, as arms of the state, West Chester University and Dr. Moore acting in his official capacity are not "persons" under § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).